## TEXAS POWER & LIGHT CO. v. HERING et ux.

### No. 2569.

Court of Civil Appeals of Texas. Waco.

Feb. 3, 1944.

Rehearing Denied March 2, 1944.

Cox, Brown & Daniel, of Temple, and Bryan & Maxwell, of Waco, for appellant.

Fitzpatrick & Dunnam, of Waco, for appellees.

RICE, Chief Justice.

This proceeding was instituted by Texas Power & Light Company for the purpose of condemning an easement across two tracts of land owned by Jim Hering and wife. The latter appealed to the County Court from the award of damages by the Commissioners; and plaintiff has perfected this appeal from the judgment of the County Court.

For the purpose of transmitting electric current of high voltage between its McGregor substation in McLennan County and Gatesville Army Camp in Coryell County, it was necessary for plaintiff to construct its transmission lines over and across the lands owned by defendants. Being unable to agree with defendants on the amount of damages to which defendants were entitled because of such construction, plaintiff brought this proceeding for the purpose of acquiring, by condemnation, an easement for the purposes mentioned, over and along a strip of land 100 feet in width, aggregating 5.3 acres. In the center line of this strip the transmission line was to be erected, consisting of 5 poles and 4 guywires. The poles were not to exceed 22 inches in diameter at the ground line, were to be erected in an upright position to a depth of not exceeding 9 feet, with not exceeding 4 cross-arms to the pole, placed at a height sufficient to insure a minimum clearance of 22 feet between the lowest conductor and the ground, on which not in excess of 9 metallic wires were to be strung. The 4 guy-wires were not to exceed one inch in diameter, were to be attached to devices which were to occupy a space of ground not more than 5 feet square nor more than 15 feet deep, and which were to be buried not less than five fee below the surface of the ground. On said strip of land there was to be erected one H frame and 5 guys. The frame was to consist of 2 poles, except angle structures to consist of not more than 3 poles erected in an upright position not exceeding 10 feet apart. The maximum diameter of these poles at the ground line and their maximum depth in the ground were to be as set forth above. The guy wires or rods were not to exceed one inch in diameter and were to be fastened into the ground by devices which were not to occupy a space of ground more than 3 feet square, were

not to be more than 15 feet deep and not less than 5 feet below the surface of the ground.

Plaintiff's petition further provides: "The land upon which said lines will be located, and the space of 50 feet on each side of center line heretofore described will not be fenced or enclosed by petitioner, and no use thereof is to be made by petitioner except for the erection of said lines and devices for fastening said guy wires, and ingress and egress in the operation and maintenance thereof, and the use of said land by the owner thereof is not to be obstructed or interfered with except so far as this may be done by said lines and devices for fastening said guy-wires, and the construction, maintenance and operation thereof, and except, that in order to prevent endangering the said lines by fire, storm or otherwise, and in order to prevent causing the same to become dangerous in anywise to life or property, no growth, other than growing crops or trees less than 15 feet in height and no building or structure, is to be permitted within a space bounded by a line 50 feet on each side of the center line heretofore described * * * and any such growth, except as aforesaid, and any such building or structure will be removed at the time of construction of said lines and thereafter prevented."

Over plaintiff's objection the trial court submitted to the jury special issues inquiring as to the reasonable market value per acre of the 5.3 acres of defendants' land embraced in the easement; whether the market value of the remainder of defendants' land would be reduced by reason of the construction of the power line across the same; and the amount in money, if any, that the remainder of defendants' land would be reduced in value per acre by reason of such construction. The jury found that the reasonable market value of the 5.3 acres of land embraced in the 100 foot strip was $200 per acre; and that the damage to the 74.7 acres remaining of defendants' land was $12.50 per acre. Based thereon the court rendered judgment in favor of defendants for the sum of $1,993.75; and in favor of plaintiff for the easement and right-of-way on and along the 5.3 acres of land described in plaintiff's petition for the purpose of maintaining and operating a high tension power line.

It was the theory of defendants (adopted by the trial court) that the acquisition by

plaintiff of the rights sought to be exercised by it over and along the 100 foot strip described in its petition constituted a taking of the 5.3 acres of land embraced in such strip, and therefore that the reasonable market value of the acreage so taken was the measure of damages to which they were entitled. On the other hand, it was plaintiff's contention that it was acquiring only a limited easement over and across defendants' land, and therefore the correct measure of defendants' damages was the difference between the reasonable, fair market value of the 5.3 acres of land immediately before the acquisition of the easement, and the reasonable, fair market value thereof immediately after its appropriation for the purposes for which it was condemned.

In our opinion, defendants' contention that the acquisition by plaintiff of the easement over and across the 5.3 acres of land embraced in the 100 foot strip of land constituted such a "taking" as entitled them to recover of plaintiff as damages the fair, reasonable market value of the land at the time it was so taken, has been foreclosed by the case of Texas Electric Service Co. v. Perkins, Tex.Com.App., 23 S.W.2d 320, 324, opinion by Judge Critz. The plaintiff in the above mentioned case sought to condemn an easement of the nature here under consideration over the defendant's land for the sole purpose of erecting and maintaining a transmission line. There, as here, the defendant contended that the entire 100 foot strip covered by the easement was taken. In answer to that contention the court said: "We hold as a matter of law that the entire 100-foot zone in which houses, trees, etc., are not allowed is not taken * * *." Defendants rely on the case of Perkins v. State, Tex.Civ.App., 150 S.W.2d 157, as sustaining their contention. In that case the State was condemning land for highway purposes; the easement sought was not a limited one. The court correctly held that the land embraced in the right-of-way was taken by the State, and that the owners were entitled to recover damages for the land so taken in the sum of the reasonable market value thereof.

The exact question here presented was adjudicated in the case of Texas Public Utilities Co. v. Bass, Tex.Civ.App., 297 S. W. 301, 303. There as in this case, plaintiff sought to secure, by condemnation proceedings, an easement over and along a strip of land 100 feet in width out of a larger tract belonging to the defendants for the sole purpose of erecting and maintaining a transmission line thereon, with the right to prohibit any buildings, structures and growth thereon, other than ordinary farm crops, and with right of ingress and egress to and from the same for the purpose of operating and maintaining such transmission line. There, also, defendants contended that the nature of the right, title and interest condemned in the land vested in plaintiff actual dominion, control and usage of the entire 100 foot strip on which the easement was impressed, and therefore their measure of damages was the fair, reasonable market value of the land included in the right-of-way at the time the easement was impressed thereon. It was the contention of the plaintiff in that case that defendants were not entitled to recover damages measured as above set forth because the remaining use to the landowners of the land in the area covered by the easement for ordinary farming purposes should be considered in arriving at the amount of damages to be allowed to the owners. The court concluded that plaintiff's contention was sound, and in its opinion said:

"Under the provisions of article 3265, R. S.1925, the measure of damages, except in cases where the whole tract or parcel of land is condemned, is 'the actual damages that will accrue to the owner by such condemnation,' which may be arrived at by allowing the value of the property condemned by reason of the condemnation; and such consequential damages for injuries sustained to the remainder of the tract by reason of the condemnation, and by reason of the manner in which the object or thing for which the land is condemned is constructed, or employed, or the shape in which the land may be taken * * *."

The court further held:

"It is a matter of law for the court to determine the nature and extent of the property condemned, and the jury should be instructed thereon in connection with the rule of compensation or damages applicable to the particular case."

To the same effect is the holding in the case of Texas Power & Light Co. v. Hill, Tex.Com.App., 27 S.W.2d 842.

In our opinion, the foregoing authorities make application of the rules of law laid down in State v. Carpenter, 126 Tex. 604,

89 S.W.2d 194, for the determination of the damages occasioned the landowner by impressing, by condemnation proceedings, an easement upon a certain designated part thereof, as well as any consequential damages that might be occasioned the remainder of the land by virtue of the exercise of the rights conferred by such easement. Applying the rules of law set forth in the above authorities to the facts of this case, we are of the opinion that as to the land on which the easement was impressed, the measure of defendants' damages was the difference between the fair and reasonable market value of the strip of land 100 feet wide described in plaintiff's pleadings, immediately prior to its condemnation, and its reasonable, market value, subject to such easement, immediately after it was burdened with the easement.

The other points presented by appellant's brief are not discussed because the matters complained of will probably not arise on a re-trial of this cause.

For the reasons above set forth, the judgment of the trial court is reversed and the cause is remanded.