**THOMPSON v. JANES et al.**

No. 9834.

Court of Civil Appeals of Texas.
Austin.

Jan. 25, 1950.

Rehearing Denied Feb. 15, 1950.

Tyler & Tyler, David L. Tisinger, Hardy Hollers, by Hardy Hollers, all of Austin, for appellant.

Polk Shelton, Q. C. Taylor, Kerns B. Taylor, H. Grady Chandler, all of Austin, for appellees.

HUGHES, Justice.

This is a suit brought by appellant, Guy A. Thompson, trustee for International-Great Northern Railroad Company, against R. E. Janes and the R. E. Janes Gravel Company, Inc., for the purpose of condemning four plus acres of land lying within the city limits of Austin. Trial was before a jury.

In order to obtain the right to open and close the arguments appellees admitted that the Railroad Company had the legal right and had taken all necessary steps to condemn the land, and that the only issue involved was the value of such land on August 10, 1948, and the amount of damages to be paid for taking the land and removing the personal property located thereon.

The verdict of the jury was that the value of the land was $31,650; the cost of removing personal property $201.78, and the cost of installing this property at another location to be $1,000. Judgment aggregating these amounts was entered.

Appellant has made a motion to supplement the record by being allowed to file the argument made to the jury by Mr. Polk Shelton, one of appellees' attorneys, and an order of the trial court reciting and describing certain proceedings which occurred during the trial and which are not otherwise disclosed by the record.

The motion is granted. Rule 428, Texas Rules of Civil Procedure; Barron v. James, 145 Tex. 283, 198 S.W.2d 256.

Consideration of appellant's first point convinces us that the judgment of the trial court must be reversed and a new trial granted because of a comment made by the trial judge during the progress of the trial and in the presence and hearing of the jury, and which was prejudicial to the rights of appellant.

The record shows that 3.54 acres of the condemned land was owned by R. E. Janes personally, that R. E. Janes was president of the R. E. Janes Gravel Co., Inc., and owned 90% of its capital stock, his wife owning 5% and his son owning 5%. This corporation agreed to and did pay R. E. Janes $200 per month as rental for the use of this 3.54 acres of land.

Mr. Noble Prentice, an employee of the Janes Gravel Corporation and who had been in charge of its office since July 1942, was called as a witness by appellees, and while he was testifying the following proceedings occurred:

"Q. Now, Mr. Prentice, can you tell whether from the experience you have had in the use of this property, the gravel company is justified in paying $2,400 annual rent for the property?

"Mr. Hollers: Your Honor, that is a rank conclusion of this witness. It has no relevancy to the value of the property what any particular person believes unless he qualifies him as an expert on rental values.

"Mr. Chandler: The use to which they were putting the property; Mr. Janes was renting it to the Gravel Company. He was president of the company. This witness knows whether he charged them too much or too little, or whether or not that is reasonable.

"Mr. Tisinger: It is already in evidence what they are paying. Now they are asking the witness and he is an officer of this family corporation to justify—

"Mr. Chandler: It is a family corporation and we want to see whether it is justified because it is a family corporation.

"Mr. Taylor: Whether it is profitable and reasonable for the company to pay it under the—

"Mr. Hollers: He hasn't been qualified as an expert to express an opinion as to whether or not it is reasonable or unreasonable.

"Mr. Chandler: He says he is an official of the company.

"Mr. Hollers: Until he is qualified, on rental property in general, he is not qualified to express an opinion. In fact it shouldn't take much of the profit to ask this man to express an opinion where he has worked for the man who owned the property and the man who leased it to himself.

"The Court: I believe this witness would be better qualified to answer the question than anybody else, I know of, certainly better qualified than a stranger to the Janes Gravel Company, if he is in a position to know the records of the company, he would be in a position to know whether this item of expense is reasonable or whether it is a windfall, or whether it is exorbitant.

"Mr. Tisinger: We have to object to that, Your Honor, on the ground that it is a comment on the weight of the evidence.

"The Court: Objection overruled.

"Mr. Tisinger: Note our exception.

"Q. Answer the question. A. I have forgotten the question.

"Q. Whether or not in your opinion, in your knowledge, working with the corporation, the use of the land was being put, whether or not $200 rental a month is a reasonable rental for the property? A. Yes, sir, very reasonable rental."

The use made of this evidence and its importance is reflected by quoting from Mr. Shelton's argument to the jury: "There is one factor that both counsels that represent the plaintiff in this case have gone at great length to criticize the conduct of the business of the Janes Company and Ralph who owns an interest in it or the presidency of it. Why do they do that, because if you believe that Ralph Janes made a honest and fair contract with his corporation their whole case falls and is built on sand. Why do I say that? Every man that testified he said the main factor in determining the value of property was what?

It was the revenue the property was bringing—the rent the property was bringing, and still the main factor being the rent, they are denying, every one of them, to take the main factors into consideration in determining the value of this property. That is why they want to hoodwink you into believing that Ralph Janes made a trade with himself and no other reason. What did Ben King say? He said the major factor in determining the value of any property that I appraise is the amount of money or the amount of income that the property is bringing to me or bringing to my men. That is what he said. They say disregarded as to this property, the main factor. I ask them, every one of their appraisers, did they take into consideration that the property was bringing $200 a month, and what did they say? We didn't consider it at all. When you take the main factor from anything you can't arrive at the right conclusion. They couldn't afford to take that into consideration; when they do, you arrive at the conclusion that the reasonable cash market value of that property on the 8th day of August was somewhere in the neighborhood of $50,000."

The record as well as the argument of Mr. Shelton show that the most tangible evidence as to value of the land was this rent, provided it was fair and reasonable. This was a crucial question. Mr. Prentice, even though he may have been competent or qualified, in a legal sense, to answer the question, was, nevertheless, an interested witness and one whose testimony would ordinarily be subject to severe scrutiny. Yet, the trial judge remarked that he believed this witness to be "better qualified" to answer the question than anyone else he knew. We are not impressed with appellees' view that the remarks of the judge concerned only the competency of the witness and the admissibility of his answer to the question. He may have so intended, but the words used are not subject to such construction. In the first place, he used the expression, "better qualified." If he was referring to legal qualification the words were inept because there are no degrees of legal qualification. A witness is either qualified to answer a question or he is not. Then, too, the judge compared the witness Prentice with all the other witnesses within his knowledge. Surely he was not comparing legal qualifications. They should be and are the same.

■ The only fair and reasonable interpretation to be placed upon this statement is that in the opinion of the judge Mr. Prentice knew more about the reasonableness of this rent than anyone else and that his testimony should be weighed accordingly.

■ Our judicial system, in which the right to trial by jury is held inviolable, denies the right of a trial judge, in the presence and hearing of the jury, to comment upon the credibility of a witness or the weight to be given his testimony. American Express Co. v. Chandler, Tex.Com.App., 231 S.W. 1085; City of Houston v. Pillot, Tex.Com.App., 105 S.W.2d 870.

We have examined and considered all of appellant's remaining points except the one complaining that the verdict was excessive, as to which we express no opinion. All of such points are overruled except as indicated below.

■ There being evidence that this property was suitable for a gravel loading site and its proximity to the Colorado River and the amount of gravel in such river being shown by appellees, we believe the trial court should permit appellant great latitude in proving any fact which would reasonably tend to show that such gravel or any portion thereof could not or would not be available to appellees, such facts, if any, to be established under the usual rules of evidence. This ruling, however, does not make admissible recitations contained in a legislative act as proof of the truth of such recitals.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.