**THOMPSON v. JANES et al.**

No. 9987.

Court of Civil Appeals of Texas. Austin.

Jan. 16, 1952.

Rehearing Denied Feb. 6, 1952.

Tyler & Tyler, Sidney Purser, David Tisinger and Hardy Hollers, all of Austin, for appellant.

Polk Shelton, White, Taylor & Chandler, Q. C. Taylor, H. Grady Chandler and Kerns B. Taylor, all of Austin, for appellees.

GRAY, Justice.

This is a condemnation suit filed by Guy A. Thompson, Trustee for International-Great Northern Railroad Company, appellant, against R. E. Janes and R. E. Janes Gravel Company, Inc., appellees. On a former appeal to this Court the cause was reversed and remanded, Thompson v. Janes, Tex.Civ.App., 227 S.W.2d 330, and this appeal is from a judgment rendered upon a jury's verdict at a second trial.

The purpose of the suit was to condemn approximately four acres of land, in two adjacent tracts, lying within the corporate limits of the City of Austin. Appellant's original petition described the land as first and second tract, gave a field note description of each tract, and made reference to deeds and their records. Appellant alleged that it desired to acquire the land "for the purpose of the transaction of its business, for its depots, station buildings, depot and station grounds, lights, power, gas, telephone and telegraph lines, for the construction of a water supply, for the right of way, for new and additional rights of way, for change and for relocation of road beds, to shorten its lines and parts thereof, for reduction of its grades and any of said grades for double tracking its railroad, for constructing and operating its tracks, for the construction, maintenance and operation of its depot and station buildings, depot and station grounds, train sheds and switching tracks; and for any and all other lawful purposes connected with operating and running its road and for any and all other lawful purposes necessary to the building, operating and maintaining its depot and station buildings, depot and station grounds."

Commissioners were appointed and the cause was set down for hearing on March 10, 1948. On this date appellees requested an adjournment of the hearing whereupon an order was entered adjourning the hearing to September 9, 1948, and reciting that the parties had agreed that:

"* * * pending which time Guy A. Thompson, Trustee, for the International-Great Northern Railroad Company, his agents, servants, and employees may go into possession of the subject property with the full consent of the said R. E. Janes and R. E. Janes Gravel Company, Inc., provided that said R. E. Janes and R. E. Janes Gravel Company, Inc. shall have until August 21, 1948 to make such additional exploratory operations and tests to determine the amount and quality of sand and gravel, if any, underneath the lands sought to be condemned, and providing further that said R. E. Janes and R. E. Janes Gravel Company, Inc. have agreed that on August 21, 1948, all personal property and equipment owned or claimed by either of them will be removed from said land and premises; without prejudice to any claim for damages for removal of the same.

"Provided further that the said R. E. Janes and R. E. Janes Gravel Company, Inc. have agreed to in no manner interfere with the possession and use of the property by the said Guy A. Thompson, Trustee, his agents, servants and employees, except in the manner and to the extent above mentioned, that is, in the making of exploratory operations until August 21, 1948 and in the removal of personal property and equipment on or before August 21, 1948.

"Provided further that the said R. E. Janes and R. E. Janes Gravel Company,

Inc. further agree that the railroad, that is, the said Guy A. Thompson, Trustee, his agents, servants and employees, may have one or more agents or associates present at the time of any exploratory operation and tests and any of such agents, or associates of the railroad shall be furnished or allowed to take samples of the same material as may be taken by the said R. E. Janes and R. E. Janes Gravel Company, Inc., or either of them.

"Provided that, and it is agreed by both parties, that none of the parties have waived any rights asserted in this proceeding or any rights under law except as is herein otherwise stated, and except it is further expressly agreed that the railroad shall suffer no liability for trespass or unlawful entry by reason of the taking possession, the taking of such possession being hereby expressly consented to by R. E. Janes and R. E. Janes Gravel Company, Inc.

"It is further ordered that the parties having agreed hereto that the Commissioners and each of them shall this date view the subject property and the valuation later to be made by the Commissioners shall be as of this date, and the compensation to be paid to the said R. E. Janes and R. E. Janes Gravel Company, Inc., if any, shall be based upon the reasonable cash market value of the land as of this date, and such damages as may be shown on account of the removal of personal property from the land.

"Provided further and it agreed by the parties that this date shall be controlling as the date the property is to be valued, not only with respect to the award, if any of these Commissioners, but same shall be controlling with respect to any subsequent proceeding that might be taken by either party."

This agreement was signed by the Commissioners and was approved by the attorneys for appellant and for appellees and by appellees. The land was vacated by appellees, appellant went into possession thereof and has made improvements thereon.

The cause was set down for trial on February 19, 1951. On February 13, appellant filed a motion for leave to file its first trial amendment and which trial amendment was attached to the motion as an exhibit. Therein appellant alleged that after the cause was set down for trial it discovered that appellees do not own or have an interest in the second tract of land described in its original petition and sought to dismiss its cause of action as to that tract. It alleged it would require the use of the balance of the land for the uses, supra. This motion was denied, and on February 20, appellant filed its motion for leave to file its second trial amendment. Substantially the same allegations were contained in the second as were contained in the first motion and petition and appellant again sought to dismiss as to the second tract. This motion was denied, and on February 21, appellant filed its supplemental petition wherein it admitted appellees owned the fee simple title to the first tract, and alleged that appellees' interest in the second tract was limited to a mere naked occupancy and claim of right of occupancy. In this petition appellant sought to condemn only an easement for the purposes alleged, supra. This petition was stricken on appellees' motion.

Appellant's first four points are directed to the action of the trial court in refusing the foregoing motions, striking its supplemental petition, and refusing to permit it to dismiss as to a portion of the land.

█ By filing its original petition to condemn the two tracts of land therein described, appellant necessarily admitted appellees' title for otherwise the county court would not have had jurisdiction. McInnis v. Brown County Water Improvement Dist. No. 1, Tex.Civ.App., 41 S.W.2d 741, error ref.; Houston Independent School Dist. v. Reader, Tex.Civ.App., 38 S.W.2d 610. After the filing of its original petition, appellant entered into the agreement, supra, and took possession of the lands. This agreement was binding upon the parties to it and, by it, they agreed that the compensation to be paid "shall be based upon the reasonable cash market value of the land as of this date" and the damages resulting from the removal of personal property. Taylor v.

722

Tod, Tex.Civ.App., 185 S.W.2d 772, error ref., w. m.

In its trial amendment appellant says in effect that it has discovered an error in the allegation of ownership contained in its original petition. In its supplemental petition appellant abandons condemnation of the fee title and seeks to condemn only an easement. It does not offer to return the possession to appellees nor to reimburse them for the personal property removed therefrom. It did not seek to make additional parties and did not ask that the damages be paid into the registry of the court to await a final determination of any adverse claims. Thus appellant did not avail itself of a remedy to protect itself against claims other than those of appellees. Rabb v. La Feria Mut. Canal Co., 62 Tex.Civ.App. 24, 130 S.W. 916, error ref.

■■■ Subject to well established exceptions, a condemnor may dismiss the proceedings at any time prior to confirmation or judgment. Leonard v. Small, Tex.Civ. App., 28 S.W.2d 826, error ref.; Board of Regents of State Teachers' College v. Kelley, Tex.Civ.App., 208 S.W.2d 565. However, the right to correct errors, to dismiss the proceeding and to abandon the purpose of taking the land may not be exercised to the prejudice of the landowner, and such rights may be lost by the taking possession of the property. Brazos River Conservation & Reclamation Dist. v. Allen, 141 Tex. 208, 171 S.W.2d 842; Kansas City, M. &. O. Ry. Co. v. Kirby, Tex.Civ.App., 150 S.W. 228, error ref.

By special issue No. 1, the trial court asked the jury to find "the reasonable market value in Austin, Texas, on August 10, 1948, of the east or first tract of land," and by special issue No. 2 the jury was asked to find that value "of the west or second tract of land." Appellant says this was error because it sought to condemn only an easement over the land, and further says the trial court erred in refusing to instruct the jury that it was seeking to condemn only an easement.

■■ The agreement, supra, fixed the compensation to be paid to appellees and the issues as submitted were in accord with that agreement. Appellant having made the agreement and having taken possession of the lands under it cannot now relieve itself of the obligation of paying the damages it agreed to pay.

■■ Even though Art. 6339, Vernon's Ann.Civ.Stat., limits the right acquired by appellant over appellees' land to an easement, the uses to which the land was to be put (uses, supra) would necessarily constitute the exercise by appellant of complete dominion over it to the exclusion of any beneficial use thereof by appellees and would therefore be a complete taking of the land and would destroy its "market value" to appellees. It is our opinion that the issues as submitted were proper inquiries. Art. 3265, Vernon's Ann.Civ.St.; Perkins v. State, Tex.Civ.App., 150 S.W.2d 157, error dism.; Aycock v. Houston Lighting & Power Co., Tex.Civ.App., 175 S.W. 2d 710, error ref. w. m.; Texas Power & Light Co. v. Hering, Tex.Civ.App., 178 S. W.2d 162, approving Perkins v. State, supra.

At the beginning of the trial the parties stated to the jury that a reading of the pleadings was waived and that the only question before the jury was the value of the land on August 10, 1948. Thereupon, over appellant's objection, one of appellees' counsel read the field note description of the land contained in appellant's petition to his co-counsel who proceeded to draw a rough sketch of the land on a black board in the presence of the jury.

■■ In view of the entire record before us, we think this was immaterial. The question is: Were the rights of appellant so violated as was reasonably calculated to cause and probably did cause the rendition of an improper judgment? Rule 434, Texas Rules of Civil Procedure. The burden is on appellant to show that the error probably resulted to its prejudice. Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W. 2d 191. Maps were introduced in evidence by appellant and by appellees. These showed the location of the land, the railroad tracks, streets, the river, and the sand beach reserve. These maps and the sketch drawn by appellees' counsel do not appear to be

materially different. Because these maps were before the jury, we think it cannot be said that the admission of the sketch in evidence resulted in injury to appellant. 3–B Tex.Jur. p. 659, Sec. 1041—Note 20, p. 664.

Appellant offered the testimony of an engineer to prove that the two tracts of land described in its petition overlapped and asserted that the testimony was offered for the purpose of drawing a picture of the property as appellees had done.

The description of the land must appear upon the face of the proceedings with sufficient certainty to identify it and cannot be left to parol evidence. Parker v. Ft. Worth & D. C. Ry. Co., 84 Tex. 333, 19 S.W. 518. If the description as contained in appellant's petition was so defective that the land could not be identified the jurisdiction of the court never attached. Wooten v. State, 142 Tex. 238, 177 S.W.2d 56. Appellant does not challenge the jurisdiction of the court, and does not assert that the description of the land as contained in its petition is not sufficient to permit the land to be marked out and designated on the ground. The offered testimony would have shown that the beginning corner of the second tract as described in appellant's petition, together with the next call for course and distance, would cause the second tract to overlap with the first tract. This would amount to a showing of a false or contradictory call and would be immaterial. It would not prevent the land from being located and identified. Roberts v. County of Robertson, Tex.Civ.App., 48 S.W.2d 737, error ref. Appellant's bill of exception shows that this witness would have testified that, as described in appellant's petition, the beginning point for the description of the first tract was the northeast corner of a tract of land owned by the City of Austin, and that this corner was the same as the northwest corner of the first tract described in appellant's petition. (See beginning point of first tract, infra.) The witness would have testified that he knew where the northeast corner of the City of Austin tract was. There is a dispute in the record as to the true location of the City of Austin tract. We think, however, that the exclusion of the testimony of this witness was immaterial for the reasons stated, supra, and because if its correctness be conceded it would not prevent the land as described from being marked and located on the ground even though an overlap of the two tracts be shown.

Appellant objected to the form of the submission of special issues 1 and 2, supra, because such submission was a comment upon the weight of the evidence in assuming there was an "east" and "west" tract.

In appellant's petition the land is described as follows:

"*First Tract:* Being the South part of Lots Nos. One and Two (1 & 2) in Block No. Nine (9) in Outlot No. Eleven (11) in Division Z of said City of Austin and being all that part of said Lots One and Two lying south of the right of way of the I-GN Railroad Company, which right of way goes across said Block Nine and being the property described in deeds executed by D. H. Doom, dated May 5, 1904, recorded in Book 207, page 228, of the Deed Records of Travis County, Texas, and being also the same property conveyed by S. J. Von Koenneritz by special warranty deed dated January 21, 1943, to R. E. Janes and recorded in Volume 709, page 501, of the Deed Records of Travis County, Texas, reference to said deeds being made for all pertinent purposes, and more particularly described by metes and bounds as follows, to wit:

"Beginning at the intersection of the West line of Baylor Street produced and the South property line of the International-Great Northern Railroad Company; thence in an easterly direction along said South property line (produced easterly) forty feet more or less to the intersection of said South property line produced with the center line of Baylor Street produced; thence in a southerly direction along the said produced center line of Baylor street south 25 degrees 03 minutes west 322 feet more or less to a boundary line of the Sand Beach Reserve; thence along said boundary line of the Sand Beach Reserve north 54 degrees 50 minutes west 622.04 feet more or less to the southeast corner of a tract of land quitclaimed by R. E. Janes to R. E. Janes Gravel Company, Inc. by quitclaim deed dated the 24th day of February 1945,

reference to which is here made; thence north 25 degrees 03 minutes east along the east boundary line of said tract of land quitclaimed by R. E. Janes to R. E. Janes Gravel Company, Inc., aforesaid, 230 feet more or less to the South property line of the said International-Great Northern Railroad Company; thence in an easterly direction along the South property line of said Railroad 532 feet more or less to the point of beginning, said tract of land containing 3.54 acres more or less."

"Second Tract: A part of the Raymond Subdivision of Outlot 11, Division Z, in the City of Austin, Texas, and described by metes and bounds as follows:

"Beginning at a point on the South Boundary line of the right of way of the I-GN Railroad Company, which point is the Northeast corner of a tract of land owned by the City of Austin, Texas; thence in an Easterly direction with the South line of said right of way a distance of 101.49 feet for the northeast corner of this tract; thence South 25 degrees 3 minutes west 244.03 feet to the South line of Lot No. 1, in Block No. 9, in Outlot 11, Division Z, in the City of Austin, Texas, for the S.E. corner of this tract; thence in a westerly direction with the south line of said Lot No. 1 a distance of 106.74 feet to the east line of the Sand Beach Reserve for the S.W. corner of this tract; thence in a northerly direction with the east line of the Sand Beach Reserve 180 feet to the S.E. corner of the aforesaid tract owned by the City of Austin, Texas, and continuing with the east line of said tract owned by the City of Austin, Texas 55.92 feet to the place of beginning, said property being the same property conveyed by quitclaim by deed dated February 24, 1945, from R. E. Janes to the R. E. Janes Gravel Company, Inc."

We think reversible error is not presented. Appellant described the tracts as "first" and "second." By maps introduced in evidence Baylor Street, appellant's right of way, Lots 1 and 2, Block 9 and the Sand Beach Reserve are shown. These maps indicate the direction north. While we think the words "east" and "west" could have been left out of the issues, we fail to see how prejudice resulted to appellant by their use. The location of the tracts as being one east or west of the other is the only designation the words imply. This use does not suggest an approval of appellees' exhibit 2 nor that the tracts do, or do not, adjoin or overlap.

We think reversible error is not presented for the further reason that a condemnation proceeding "is not a trial of the title to land nor does it involve the recovery of land." McInnis v. Brown County Water Improvement Dist. No. 1, supra. [41 S.W. 2d 744.]

Appellant complains of the refusal of the trial court to strike the testimony of six witnesses and of the admission of the testimony of two others. Four of these were real estate men who had been engaged in the real estate business in Austin for several years; one was a merchant and was also engaged in the business of dealing in commercial properties; one was engaged in the business of city planning and business property analysis; one had been engaged in the lumber business for a number of years, and one was associated with a real estate company. These witnesses testified as to the value of the property and gave varying figures as their opinion of its value. Appellant cross examined each of them as to their qualifications to so testify, and also called witnesses of its own who gave opinions as to the value of the property.

To set out the testimony of these witnesses would unduly prolong this opinion, and a discussion of the testimony of any one of them would be a disregard of the others. For these reasons we state our conclusion that reversible error is not presented. While the admissibility of evidence is for the trial court, its probative force is for the jury and, as the triers of the facts, they may accept or reject the opinions of experts as well as the testimony of lay witnesses. Nass v. Nass, 149 Tex. ——, 228 S.W.2d 130. The business that the witness has been engaged in, his experience, knowledge and his opportunity to form an opinion are all matters for the jury to weigh in their consideration of his opinion as to the value of real estate. Cole v. City of Dallas,

Tex.Civ.App., 229 S.W.2d 192, error ref., n. r. e.

Following an approved definition of market value, the trial court instructed the jury that in arriving at the reasonable market value of the land " * * * you shall consider only the value of such land as adapted to such uses as would affect a purchaser and seller in the general market, or as would affect the general market value in a market where neither buyers nor sellers are under any pressure to either buy or sell." And in answering special issues 1 and 2, supra, " * * * you are instructed that the market value includes its value for any use to which the property may be reasonably adapted or put, and if the property is peculiarly adapted to some particular use, you may consider the circumstances making up such adaptability, if any, if in your opinion such use or adaptability would affect the worth of the property in the market."

Appellant requested the trial court to instruct the jury to exclude from their consideration the value of the land for speculative purposes, and, also, to disregard the possibility of future income from untried uses in estimating the value of the land.

In State v. Carpenter, 126 Tex. 604, 89 S. W.2d 194, at page 198, the court quoted, with approval, from Lewis on Eminent Domain as follows: " 'The market value of property includes its value for any use to which it may be put. If, for reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation. Some of the cases hold that its value for a particular use may be proved; but the proper inquiry is, what is its market value, in view of any use to which it may be applied, and of all the uses to which it is adapted? * * * The condition of the property, and all its surroundings, may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses this may be shown, and if such peculiar adaptation adds to its value the owner is entitled

to the benefit of it. But, when all the facts and circumstances have been shown, the question at last is, what is it worth in the market?' "

Appellant appears to say it has shown error in the refusal of the requested instructions because one witness stated the property would have a designated value to him, and another witness testified as to the value the property would have "as it might be improved in the future." This testimony was given by the witnesses on cross examination by appellant. While the cross examination of these witnesses may have been directly on the weight of the testimony we do not think that by reason of it we are permitted to assume the jury violated the instructions, supra.

Appellant complains that the trial court refused to allow evidence as to the status of appellees' title and a consideration of such evidence by the jury. We have already referred to the question of appellees' title. What we have already said disposes of this point.

By submitted issue No. 3, the jury was asked to find the reasonable and necessary cost on August 10, 1948, of installing a hopper and conveyor at another location. Appellant says this was error because "there being no competent evidence of the actual costs, if any, incurred by defendants, nor that said hopper and conveyor were installed or intended to be installed elsewhere."

By the agreement, supra, appellant agreed to pay damages "on account of" the removal of personal property from the land. The evidence shows the hopper and the conveyor were removed from the land; that in order to use them it would be necessary for them to be reinstalled; that they have not been installed at a new location, and the cost of such installation is shown to be the amount found by the jury.

■ The parties by their agreement having provided for the removal of the hopper and conveyor (personal property) from the premises and to pay damages on account of such removal, we think that for appellees to have the reasonable use and enjoyment of this property which was not

taken, it would be necessary to install the same at another location. We hold the inquiry as to cost of installation was proper as an element of the cost of removal. State v. Carpenter, supra; 16 Tex.Jur. Sec. 312 and 313, pp. 992–995.

Appellant says the trial court erred in refusing it a new trial because the verdict of the jury was excessive.

An examination of the record shows that the jury valued the land at figures considerably below the value placed on it by any of appellees' witnesses. It was less than half the value placed on the land by appellees' witness Jas. Gubbels whose testimony appellant, in its brief, terms "extravagant." The market value of the land was an issue of fact and necessarily had to be determined by the jury from the opinion of the witnesses. It not appearing to us that the jury was influenced by anything other than substantial evidence, we are unauthorized to disturb the finding. 3–B Tex. Jur. Sec. 944, p. 467; 16 Tex.Jur. p. 852, Sec. 207.

Appellant further says the verdict is excessive as a matter of law because appellant acquired only an easement over the land. We have noticed this question, supra. Appellees were entitled to recover for the injury sustained by them. City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243. This injury as shown was the permanent loss of the use of the land. Also, appellant was permitted to inquire of witnesses as to the value of an easement.

Over appellant's objection that the ownership of land should be established by documents and not by conclusions of the witness, appellee, Ralph Janes, was permitted to testify as to the land claimed by appellees.

Before announcing ready for trial appellees filed an admission admitting appellant's right to condemn the land described in its petition for the purposes therein alleged; that it was entitled to recover as set forth in the petition, except so far as it may be defeated, in whole or in part, by the allegations of the answer constituting a good defense, which may be established on the trial; that it had taken the necessary steps to condemn the land, and that the only issue involved in the cause "is the question of the value of the land on August 10, 1948, to be condemned by plaintiff and the damages to be paid to defendants for the taking of said land and damages for removal of personal property from said land." Without further setting out the agreement, we think all the requirements of Rule 266, T.R.C.P. were met. Lower Colorado River Authority v. Burton, Tex.Civ.App., 170 S.W.2d. 783.

We have already noted that appellant's petition described the lands by metes and bounds and made reference to deeds. In these deeds appellee, Ralph Janes, was named as the grantee and grantor. Appellant alleged it had attempted to settle and agree with appellees and had attempted to purchase the land from them. Appellant having admitted the ownership of the land by appellees, it was not prejudiced by the testimony complained of which identified the land described by it, though ordinarily a deed or other documentary evidence is the best evidence as to whom and what property was conveyed.

Appellees having filed the admission, supra, they were entitled to open and conclude in adducing evidence and in the arguments, and the trial court did not err in so allowing them.

It being our opinion that reversible error is not presented, the judgment of the trial court is affirmed.

Affirmed.