HOUSING AUTHORITY OF CITY OF
DALLAS v. SHAMBRY et ux.

No. 10086.

Court of Civil Appeals of Texas.
Austin.

Nov. 5, 1952.

Rehearing Denied Nov. 26, 1952.

964

Scurry, Scurry & Pace, Dallas, Ethan B. Stroud, Dallas, for appellant.

McKool, McDaniel & Bader, Dallas, Bert Bader and Mike McKool, Dallas, for appellees.

ARCHER, Chief Justice.

This is a condemnation case tried in the County Court of Dallas County, Texas, at Law No. One, to which court the appellees appealed on June 21, 1951, being dissatisfied with the Commissioners' Report awarding damages on the grounds that such award was wholly insufficient and that appellant had no right or power to condemn said property. Pending the appeal in said County Court, the appellant deposited into the court the sum of $3,850, that being the amount of the Commissioners' award, and on the 17th day of July, 1951, obtained possession of appellees' property. The appellant, the Housing Authority of the City of Dallas, sought the appropriation of the whole of appellees' property, and appellees in an amended pleading filed January 16, 1952, in said County Court, admitted appellant's cause of action except as to the amount of damages to which appellees were entitled.

The case was tried before a jury on January 16 and 17, 1952, and the following issue was submitted to the jury:

"What do you find from a preponderance of the evidence was the reasonable market value, as that term is herein defined, on July 17, 1951, of the condemned property in this suit, together with all improvements thereon?"

The jury found in answer to this issue that the market value of appellees' property was $7,350.

The appeal before this Court is based on six points:

First Point

The verdict of the jury in the amount of $7,350 is excessive and clearly the result of inflamed prejudice and unwarranted sympathy.

Second Point

The court erred in permitting the appellant, Vera Shambry, to testify as to the number of customers which entered her cafe building each week and erred in permitting her to testify concerning the amount and kind of vegetables which she grew in her garden.

Third Point

The court erred in permitting each of the defendants' witnesses to testify as to the market value of defendants' property based on sales of comparable property, which sales took place subsequent to and after the time that the market value of defendants' land was to be determined.

Fourth Point

The trial court erred in allowing appellees' interest on the amount of the jury verdict from the date of the filing of the Condemnation Commissioners' award.

Fifth Point

The court erred in refusing to allow the expert witness Smith to testify concerning two properties which had been offered for sale for a considerable period of time, the expert witness having testified as to the comparability of these properties with the property involved in this lawsuit.

Sixth Point

The court erred in refusing to permit the expert witness Smith to testify as to comparable sales of improved property in the vicinity of the property involved in this case, said witness having testified as to the comparability of said properties and having pointed out the differences which were taken into account in making such comparison of values.

The property consisted of a tract of land 60 feet wide extending from Fish Trap Road to Albrect Street, a distance of 475 feet. There was a four-room house facing Fish Trap Road and two houses on Albrect, one of which was in an uncompleted condition. The house on Fish Trap was occupied by the then owners, appellees herein, as a residence, and one of the

buildings on Albrect was used by them as a cafe and had been used as such since 1945, serving beer, soda water, candy and lunches.

There were a number of witnesses testifying for both the appellant and appellees. The appellees testified as to the use of the property as a home and as a place of business, and as to the general type of construction of the buildings and as to the cost of the three places for lumber, material and labor. Testimony was given as to the location of schools, churches, bus lines, etc., and as to the value of the property.

A. C. Washington testified that he had been in the real estate business for twenty years, was acquainted with the area of the property under consideration, that he had made many appraisals, described the premises, that the cash market value of the property was $8,254.50, that the property in the area being taken over by the Dallas Housing Authority has increased in value from forty-five to fifty per cent from 1945 to 1951, and over one hundred to five hundred per cent from 1939 to 1951, and testified as to the value of comparable property.

Witness Joe J. Kennemer, real estate agent for three years, detailed his experience and fixed the value at $8,450.

Witness C. L. Kitchens gave evidence as to his experience in building and real estate businesses and placed a value of $9,550 on the premises.

Witnesses for the appellant were Joseph R. Smith who gave in detail his various connections and his activities in the real estate appraisal business for a long period of time and fixed the sum of $3,750 as the fair market value of the property; Howard Dunham testified that he had been in the real estate business for thirty years, and he placed a value of $4,400 on the property; W. C. Miller had been in the real estate business since 1937 and had specialized training in this field, and he felt that the property was worth $4,400. The latter two witnesses collaborated together in making the appraisal, and hence the same valuation. These witnesses did not recall the unfinished building and neither

of them ever bought or sold any property in the area.

■ We believe that the evidence in the record reasonably supports the verdict of the jury. The market value of the property was an issue of fact that the jury was called on to determine from the opinions of the several witnesses which witnesses the jury heard and observed them as they testified, and being the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony, resolved the facts in favor of the appellees insofar as it did. The amount fixed by the jury was greater than that testified to by appellant's witnesses and less than that testified to by appellees' witnesses, and we are not authorized to disturb the finding. Thompson v. Janes, Tex. Civ.App., 245 S.W.2d 718, affirmed Tex., 251 S.W.2d 953. In the Thompson case we discussed the question of excessive damages and do not further develop this question herein, but refer to this case and the authorities cited therein.

■ We overrule appellant's Second Point directed to the testimony as to use of the property, its natural advantages as to availability to customers. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (Comm. App., Sec. A).

■ The Third Point is directed to the action of the court in permitting the witnesses to testify as to sales which took place subsequent to the time of the taking of the property.

Testimony was given as to the sale of comparable property that was made in December, 1951, and objection was made because the sale was made some months after July, 1951, and that there was no showing as to whether it was a free sale or not.

We believe that evidence as to such comparable sales was admissible in order to show that the estimates of the value of the property in controversy was fair and reasonable. Such comparison may be worthless by reason of time and location, but may be considered in connection with the weight to be given the testimony of the witnesses. Texas Law of Evidence, McCormick and Ray, p. 908; Joyce v.

Dallas County, Tex.Civ.App., 141 S.W.2d 745. In the case of Nagelin v. State, Tex. Civ.App., 153 S.W.2d 269, 270, the Court held:

"Other propositions complain of the trial court's actions in ruling upon the admissibility of certain testimony. A detailed discussion of these propositions would serve no useful purpose. It is sufficient to say that when issues such as values are involved, the trial court is vested with an extensive discretion as to the admissibility of testimony relating thereto."

■ Point No. Four is sustained insofar as the judgment allowed interest on the amount of the verdict from June 16, 1951, the date of the Commissioners' award.

Interest is allowable on the sum of $3,-500, being the amount of the increase of the award by the jury, to begin on July 17, 1951, the date of the Order of Possession and the date on which the appellant acquired possession of appellees' property. No interest is allowable on the amount of $3,850 deposited in the Court to the credit of appellees as a tender to appellees, and such amount could have been withdrawn by appellees. Baldwin v. City of San Antonio, 59 Tex.Civ.App. 262, 125 S.W. 596. Housing Authority of City of Dallas v. Dixon, Tex.Civ.App., 250 S.W.2d 636 (error ref. n.r.e.).

■ The Fifth and Sixth Points directed to the action of the Court in refusing the expert witness Smith to testify concerning the sale of two properties which had been offered for a considerable period of time, and as to comparable sales of improved property in the vicinity of the property involved in this case, are overruled in view of the testimony of the witness who did not testify as to the date of any particular sale, or property, to a particular person at a fixed price, and his testimony was as to sales over a period from 1945 to 1949. Nagelin v. State, Tex.Civ. App., 153 S.W.2d 269; 16 Tex.Jur. 1037; 18 Am.Jur., Sec. 351, p. 994.

The judgment of the trial court is reformed so as to allow interest on the sum of the increase of $3,500 from July 17, 1951, and no interest on the sum of $3,850, which had been deposited in the registry of the court, and as reformed the judgment is affirmed.

Reformed in part and in part affirmed.

On Motion for Rehearing.

HUGHES, Justice.

Appellee moves for rehearing on the ground that we erred in disallowing recovery of interest on the amount deposited in the registry of the court from the date of such deposit and states that the case of Housing Authority of City of Dallas v. Dixon, Tex.Civ.App., 250 S.W.2d 636 (Dallas C.C.A., error ref. n.r.e.) cited by us does not support but is contrary to our holding in this regard.

We cited the Dixon case as authority for the right of a condemnee to withdraw, without prejudice, the deposit made under Article 3268, V.A.C.S.

We do not agree with the Dixon case in its holding on the question of interest and this question was not presented to the Supreme Court in the application for writ of error filed in that case.

■ Since under the express provisions of Sec. 1, art. 3268, supra, the deposit is made "subject to the order of the defendant" and since under the approved ruling in the Dixon case, supra, such deposit can be withdrawn by defendant without prejudice to his right of appeal from the Commissioners' award, it logically follows, in our opinion, that in cases where the amount of damages is the only issue the deposit is the equivalent of a tender and prevents the running of interest to the extent of the amount of the deposit. This is the express holding of the Court in Baldwin v. City of San Antonio, 59 Tex.Civ. App. 262, 125 S.W. 596, cited approvingly in Texarkana & Ft. S. Ry. Co. v. Brinkman, Tex.Civ.App., 288 S.W. 852 (Beaumont C.C.A.), affirmed Tex.Com.App., 292 S.W. 860 and in State v. Hale, 136 Tex. 29, 146 S.W.2d 731.

The motion is overruled.

Motion overruled.