**TEXAS–NEW MEXICO PIPELINE COMPANY, Appellant,**

v.

**Tom LINEBERY and Evelyn Linebery, Individually and as Trustee, etc., Appellees.**

**No. 5323.**

Court of Civil Appeals of Texas.

El Paso.

July 15, 1959.

Rehearing Denied Aug. 3, 1959.

John R. Lee, Kermit, William N. Sands, J. S. Rowe, Midland, for appellant.

George Finley, J. Albert Dickie, Kermit, for appellees.

LANGDON, Chief Justice.

This is an appeal from the County Court of Winkler County, awarding appellees, Tom Linebery and Evelyn Linebery, Individually and as Trustee under the will of W. F. Scarborough, deceased, for Leta Scarborough and Lucile Scarborough, defendants below, the sum of $10,363.57, for land condemned for pipeline purposes by appellant, Texas-New Mexico Pipeline Company, a common carrier pipeline company, and for incidental damage to adjacent lands owned by appellees. Appellees own a vast ranch lying partly in Texas and partly in the State of New Mexico. For purposes of this suit, the trial court limited the testimony to that portion of the ranch lying wholly in Winkler County, Texas, and consisting of approximately 27,000 acres, out of which appellants have condemned three, non-contiguous, 40-foot wide strips of land for the purpose of laying a four-inch pipeline thereon, occupying a total of 7.05 acres of land. The judgment of condemnation provided for an easement over and across the three strips of land of defendants "for the construction, maintenance and servicing thereon of a pipe line for the purpose of the transportation of oil, gas, mineral solutions and liquified minerals in the State of Texas provided, however, that Texas-New Mexico Pipeline Company did not acquire the right to fence the land covered by said easement, and the right of ingress and egress is limited * * * *" in and upon the three strips condemned, and it has no right to occupy any part of any other lands of defendants for any purpose whatsoever, and further provided that the pipeline should be buried at least twenty inches under the surface of the ground.

The sum of $10,373.57 is made up of two items: $9,284.75 for the 7.05 acres contained in the three strips of land condemned for easement purposes, and $1,078.-82 damages to the remainder of the defendants' land in Winkler County, comprising 26,970.5 acres of land.

In the original statement of condemnation filed with the county judge of Winkler County, appellant proposed to acquire an easement over and across four non-contiguous strips of land identified as Tracts 1, 2, 3, and 4, in said Statement. Special commissioners were appointed by the county judge and, through regular proceedings the commissioners, on September 26, 1956, entered an award of $7,326 for all damages sustained by the landowners. Appellant duly and timely filed its appeal from the award of the commissioners to the county court. Following the award of the commissioners appellant made the bond and the cash deposit as required by Article 3268, Revised Civil Statutes, for possession, pending litigation, of the land sought to be condemned; but before trial appellant filed a supplemental petition relinquishing and abandoning its right, title and interest in and to Tract 1, as described in the original statement of condemnation, and this tract and damages are not involved·in this suit.

Appellees filed no written pleadings prior to trial, but denied all jurisdictional prerequisites, and the appellant had the burden of proof on the entire case.

The case was submitted to the jury on six special issues. Issues 1 and 2 inquired as to whether plaintiff made an effort in good faith to agree with defendants on the consideration to be paid for the easements prior to the condemnation. These two issues, while answered in the negative by the jury, are not involved in this appeal because defendants conceded appellant's right of condemnation and moved the trial court to enter judgment that appellant had the right to condemn, and for judgment on the verdict for the damages found by the jury to have accrued by virtue of said condemnation. The court granted defendants' motion and entered judgment based upon answers of the jury to Special Issues 3, 4, 5 and 6, awarding damages to defendants in the sum of $10,363.57.

Judgment was rendered on the last day of the term of the county court, and, under the provisions of Rule 329a, Texas Rules of Civil Procedure, motion for new trial is not a prerequisite to this appeal. Appellant duly and timely excepted to the judgment of the trial court and gave notice of appeal.

The Statement of Facts in this case contains 1,032 pages, and appellant brings 22 points of error. We shall not attempt to discuss each point separately. We believe these points rest, principally, upon two questions:

1. Whether or not the acquisition of the three 40-foot-wide easements over and across defendants' lands constituted such a "taking" as to entitle defendants to recover, as an element of damages, the difference in the reasonable market value of the mineral estate underneath such strips of land, considered as "severed land", before and after the taking; and

2. The question of whether or not the remaining 26,970.5 acres of land in Winkler County owned by defendants constituted a single tract of land, when the undisputed evidence shows that part of said land was separated by a right-of-way of State Highway 82, by a right-of-way for the Texas-New Mexico Railway Company, and by a County road.

From the undisputed facts in this case, it appears that defendants owned all of the surface in a tract of land consisting of 26,970.5 acres of land, exclusive of the three 40-foot-wide strips of land sought to be condemned which contained a total of 7.05 acres; that defendants owned no interest in the mineral underneath Tract 2, located in Sections 2 and 17 of Block 74, P. S. L., and containing 1.33 acres; and owned less than the entire fee in the minerals underlying Tract 3, located in Sections 1 and 18, Block 74, P. S. L., containing 2.00 acres, and in Tract 4, located in Section 1, Block C–22, containing 3.72 acres; that defendants owned the same interest in the minerals underlying the land

adjacent to and on both sides of the strips sought to be condemned as they owned in the mineral underlying the two strips in which they are shown to have owned a mineral interest; that the mineral interest owned by the defendants was under valid, existing oil and gas leases in which defendants, as lessors, retained the usual ⅛th royalty; that none of the lessees in said leases are parties to this suit.

It was appellees' position in the trial court that it is proper on a condemnation case to consider the land taken as "severed land" viewed from the standpoint of a vertical severance as well as a horizontal severance, and they argue that land includes minerals in land as well as the surface. Appellees' contention is the same on this appeal, and they cite the Supreme Court case of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 201, as authority for this proposition.

It is apparent from the record in this case that the trial judge made a valiant and conscientious effort to apply the rules laid down by the Supreme Court in the Carpenter case (supra). The issues as submitted by the trial court are substantially the same as those suggested by the Supreme Court, and need not be set out here.

In the Carpenter case the Supreme Court disclaimed any intention of laying down a hard and fast rule to be followed in every eminent domain case, saying:

"Without intimating that this method should be followed in all like cases, we believe it will furnish a practical method of submission in most similar cases."

There are a number of elements that distinguish the case at hand from the facts in the Carpenter case. In the Carpenter case there is no intimation that the land sought to be condemned for highway purposes was over valuable oil and gas-bearing land, no contention that a severance of the mineral estate from the surface estate had ever been effected by a sale or lease of the minerals, and no contention that the mineral estate constituted a part of the land taken. In the case at hand, each of these elements are present.

■ It is well settled that, in a condemnation proceeding such as we have here, what the condemnor took was merely an easement which does not carry with it the right to exclusive possession of the strip. Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151; Texas Electric Service Co. v. Vest, Tex.Civ.App., 310 S.W.2d 733; Texas Electric Service Co. v. Perkins, Tex. Com.App., 23 S.W.2d 320; Texas Power & Light Co. v. Hering, Tex.Civ.App., 178 S.W.2d 162. The condemning authority acquires no interest in the minerals; title to the minerals underlying the strips is not affected, and remains the same as before the taking of the easement.

In considering the question of whether the value of the minerals lying in and under the pipeline strips constitutes a part of the land taken by condemnation, in determining what the reasonable cash market value of the land taken would be before and after the taking, we make the same distinction that was made in the case of Calvert v. Harris County, Tex.Civ.App., 46 S.W.2d 375 (ref.), 377, wherein the court, adopting the language of Southern Pacific R. Co. v. San Francisco Savings Union, 146 Cal. 290, 79 P. 961, 70 L.R.A. 221, said:

"It can hardly be that, in every case where a right of way is sought to be condemned over a strip of oil-bearing land, the valuable rights which were owned by the defendant when the condemnation proceedings were inaugurated, and which the condemning party does not acquire, are entirely lost to defendant owning adjoining land by reason of the condemnation."

Appellees offered only two witnesses on values, namely, Mr. Richard W. Hillyer, and one of the defendants, Mr. Tom Linebery. The witness Hillyer is a consulting engineer and geologist, and his qualifica-

tions to testify as an expert on the value of minerals is not questioned. The witness, himself, stated that he was not qualified to give an opinion as to the value of the surface, and his testimony was confined solely to the value of the minerals underlying each of the three strips of land sought to be condemned. On direct examination the witness was permitted, over appellant's objection, to testify as to the value of the mineral estate only, considered as severed land, under each of the three tracts sought to be condemned, before and after the taking on September 26, 1956.

For purposes of brevity, as well as clarity, the values of the mineral estate under each of the three tracts, as testified to by the witness Hillyer, are set out as follows:

| Tract No. | Acreage | Value Before | Value After |
|---|---|---|---|
| #2 | 1.33 acres | $2,992.50 | Zero |
| #3 | 2.00 acres | 9,000.00 | Zero |
| #4 | 3.72 acres | 7,440.00 | Zero |

In arriving at the above values, the witness was questioned about each tract separately, in substantially the same form:

"Mr. Finley:

"Q. * * * Now, in regard to this tract of land, and considering it as severed land, were you able to form an opinion as to the reasonable cash market value of said strip of land, considering the mineral estate only, on or about September 26th, 1956, prior to the time that Texas-New Mexico Pipe Line Company had affixed its easement whereby it could construct a pipe line on this strip of land? A. Yes.

"Q. And what was that reasonable cash market value that you arrived at? A. Seven Thousand Four Hundred and Forty dollars.

"Q. Now in regard to the mineral estate, and considering this same strip

of land as severed land, were you able to form an opinion as to the reasonable cash market value of that strip of land on or about September 26, 1956, after Texas-New Mexico Pipe Line Company had affixed its easement whereby it could construct a pipe line on this strip of land? A. That was before?

"Q. This was after. A. As I mentioned before, I would have to answer that the value would be zero."

Appellant objected on each occasion to the question as propounded, and to the answers elicited from the witness, on the ground that the acquisition of a 40-foot-wide strip for the construction of a four-inch pipeline did not constitute such a taking as would result in a severance of the mineral estate underlying the strips taken from the adjoining mineral estate on either side of the condemned strips. On voir dire examination of the witness by appellant, which has been preserved for our consideration by bill of exception, it was established that, in arriving at the values he had assigned to the minerals underlying the three tracts, the witness did not take into consideration any unity of ownership between the minerals underlying the land taken and the adjacent minerals in the remaining land, nor did he take into consideration the possibility that the minerals underlying the strips taken could be recovered by drilling on the adjacent land. He said:

"* * * I stated that my entire approach to this problem was as of land that was severed from the surrounding lands, and that is the way I did the work."

On voir dire the witness stated that he did not consider any of the tracts as land under oil and gas lease with the land surrounding it. He testified that, in his opinion, the oil and gas minerals estate underlying each of the tracts could be recovered by conventional drilling and production methods, possibly by existing wells, or by drilling on

the land adjacent to the strips taken; that the porosity of the oil and gas-bearing sands was good, and that the mineral estate under the strips taken could probably be recovered without the necessity of drilling on the strips condemned or by employing directional drilling methods; that if he had been permitted to consider the mineral estate, not as severed land, but as a part of the land that surrounded it, he would have assigned a value greater than zero to the minerals after the easement had been affixed.

■ While it follows, from what we have said, that we do not agree with appellees' contention that the easements acquired in this case by appellant constitute a taking of the mineral estate underlying the easements, it does point up the difficulty encountered by appraisers, as well as by attorneys, in attempting to apply the "severed land" concept, as announced in the Carpenter case, and arrive at the reasonable cash market value of the land taken. The Carpenter case directs that the appraiser not consider any unity of ownership between the part being taken and the remainder. An analysis of the testimony of Mr. Hillyer reveals that, in arriving at the value of the minerals under the tracts of land before the easement was fixed, but considered as severed land, his calculations were based on the value of the minerals in place considered as a part of the land surrounding it. He testified that no prudent operator would drill on so small a tract; and, if such be the case, regardless of the value of the underlying minerals, a prudent operator would not knowingly expend a greater sum in recovering the minerals than he could realize from their sale after production; hence, it would appear that the minerals had no reasonable cash market value "considered as severed land", either before or after the acquisition of the easements. The value of the mineral estate underlying the rather widely separated 40-foot-wide strips of land, containing 1.33, 2.00 and 3.72 acres of land, respectively, would have no reasonable cash market value, assuming the cost of production would exceed the value of the minerals in place, except when such strips are considered as a part of the land surrounding it. No testimony was offered by the witness Hillyer with respect to the before and after value of the remaining land.

Appellee Tom Linebery, the only other witness offered by the defendants on the question of damages, testified as to the value of each of the three strips taken, as well as the remaining land consisting of 26,970.5 acres.

Contending that it is proper to produce evidence of any fact which may reasonably affect the value of the land taken, including mineral damages, appellees have cited: Brazos River Conservation and Reclamation Dist. v. Costello, Tex.Civ.App., 169 S.W.2d 977 (wr. ref., w. o. m.); City of Teague v. Stiles, Tex.Civ.App., 263 S.W.2d 623 (ref., n. r. e.).

■ In the Costello case the condemnee, Costello, owned a tract of approximately 4,100 acres of land, out of which the Reclamation District sought to condemn about 2,400 acres for the purpose of creating a lake or reservoir which would inundate and permanently flood a large portion of defendant's land, rendering more difficult and expensive the recovery of the valuable minerals underlying the land taken, as well as the minerals underlying the remaining land. The permanent flooding of the land condemned was one of the uses to which the land taken was to be subjected. It not only impaired the owner's use of the surface thereof, but resulted in an actual taking of the surface estate; and, if not a complete taking of the underlying minerals, it rendered their recovery more difficult, if not impossible, and thus seriously impaired their value. The value of both the surface and mineral estate in the remaining land was shown to have been seriously impaired due to the fact that the construction of the reservoir isolated the remaining land from the nearest town, roads, postoffice, pipelines, etc. The Stiles

case involved a similar situation, wherein the City of Teague sought to condemn 99.5 acres for the purpose of creating a lake or reservoir, the result of which would be the placing of a lake on the surface above the minerals, thus rendering them more difficult to recover. While the title to the minerals underlying the land taken, both in the Costello and the Stiles cases, remained the same, their value was impaired; and, if supported by the evidence, constitutes a proper element of damage for the jury to consider under appropriate instructions.

Appellant urges that the trial court erred in assuming, as a matter of law, that the remaining 26,970.5 acres in Winkler County, owned by defendants, constituted a single tract of land, it being the contention of the appellant that the land is physically separated, or divided, by State Highway 82, the railroad right-of-way of Texas-New Mexico Railway Company, and by a county road.

We are of the opinion that the physical division of the appellees' land by the railroad and highways raised the issue of separateness of the several tracts, and that it was error for the court to assume, as a matter of law, that the remaining 26,970.5 acres of land constituted a single tract of land for the purpose of assessing damages. The burden is upon the landowner to prove the damages sustained by him; they may not be assumed.

By motion filed October 20, 1958 appellant seeks to amend the original transcript filed in this court on May 23, 1958, for the purpose of showing additional court costs omitted by the clerk in preparing the original transcript. Appellant alleges in its motion that the bill of costs contained in the original transcript reflects costs in the court below to be $236.33, when, in truth and in fact, said court costs are in the sum of $2,063.76. Appellees have opposed appellant's motion contending (1) that it comes too late; (2) no good cause is shown for late filing; (3) it is not made in good faith; and (4) that the cost bill contained

in the amended transcript is an inaccurate statement as to court costs.

In considering appellant's motion, we have examined the original transcript filed in this cause, and we are of the opinion that Rules 376 and 376-a have not been strictly complied with. There is no showing that the transcript was prepared by the clerk under written direction of appellant; it does not contain a certified bill of costs, although it does contain a certificate of the probable costs in the court below and in the appellate courts; and it is not authenticated; the transcript is not concluded by certificate under seal of the court, as required by order of the Supreme Court entered January 20, 1944. We have also examined the supplemental transcript, which we consider sufficient to supply the essential omitted portions of the original transcript. Rules 428 to 431, inclusive, T. R.C.P., authorize the Court of Civil Appeals, when justice requires, to permit certain defects or omissions in the appeal of a case to be cured or supplied. In view of the rules, appellant's motion to file the supplemental transcript is granted and ordered filed. The cost bill contained in the supplemental transcript reflects that appellant has paid the sum of $1,798 in stenographic fees. Appellees state in their brief that the stenographer's charge for the original statement of facts was $618; that an additional sum of $63.25 should be included for photostating and mailing, making a total of only $681.25; that the bill of costs includes items for additional copies of the statement of facts, amounting to $1,116.75, ordered for appellant's own benefit, and which should not be included in the costs of court.

Since appellees were not furnished a copy of the written directions of appellant requesting the transcript as required by Rule 376, and appellees were not put on notice of the expenses of the trial which appellant is attempting to have included as costs, until the filing of his motion to amend the transcript to include additional

costs, some five months after the filing of the original transcript and for other infractions of the rules which we have already discussed, costs will be apportioned between appellant and appellees.

From what we have said, it follows that this case must be reversed. However, costs will be assessed against appellees to the extent of $236.33. All other costs incurred in the court below and on this appeal are assessed against appellant. Rule 382, T.R. C.P.

The judgment of the trial court is accordingly reversed and the case remanded for new trial.

ABBOTT, J., not sitting.