**TEXAS ELECTRIC SERVICE COMPANY,**
**Appellant,**

v.

**Evelyn LINEBERY, Individually and as Independent Executrix of the Estate of W. F. Scarborough, deceased; and her husband, Tom Linebery, et al., Appellees.**

**No. 5327.**

Court of Civil Appeals of Texas.
El Paso.

July 23, 1959.

Rehearing Denied Oct. 7, 1959.

John R. Lee, Kermit, for appellant.

Finley, Dickie & Scogin, Kermit, for appellees.

LANGDON, Chief Justice.

This is a condemnation suit wherein appellant, Texas Electric Service Company, a public utility corporation, having the right of eminent domain, instituted condemnation proceedings against the appellees, Tom Linebery and Evelyn Linebery, Individually and as Trustee under the will of W. F. Scarborough, deceased, for Leta Scarborough and Lucille Scarborough, for the purpose of condemning a 50-foot easement strip containing 6.37 acres, across two sections of land out of a tract of 22,407.37 acres of land in Winkler County, owned by appellees. The jury found that the value of the land taken was $286.65, and that the remainder of the land was damaged 25 cents per acre, on which judgment was entered for the further sum of $5,600.25 for damages to the remainder of the land, making a total judgment of $5,886.90. Subsequent to the return of the jury's verdict, and prior to the entry of judgment, appellees filed their written admissions wherein it was admitted that appellant was entitled to recover the easement as prayed for, and that the only issues the court should consider in entering its judgment were those concerning value. Motion for new trial was duly filed and, after hearing, was overruled; to which order appellant excepted and gave notice of appeal. All prerequisites to appeal have been taken and this case is properly before us.

Appellant brings twenty-six points of error. Points 1, 2, 3, 4, 5, 6, 7, and 8 have been grouped by appellant for purposes of argument, and are complaints of the trial court's action in entering judgment and overruling appellant's motion for new trial based upon the jury's answers to Special Issues numbers 9 and 10, which inquired as to the value of defendants' lands outside the easement strip before and after taking. Appellant's complaints are summarized as follows:

(1) By Points 1 to 5, inclusive, it is contended that there is no purported evidence upon which the jury's answers could be based; that the jury's answers to said issues were against the overwhelming preponderance of the evidence and were not based upon substantial evidence; that the answers of the jury to said issues are not supported by any competent evidence.

(2) Points 6 and 8 complain that the jury's verdict, in its answers to Issues numbers 9 and 10, is so excessive as to show that the jurors were ruled by passion and prejudice against plaintiff in determining their answers to said issues.

(3) Point 7 complains that the trial court erred in assuming as a matter of fact that 22,401 acres of land, exclusive of the easement strips, were injured, damaged or decreased in value by reason of the taking of the easements in question, and in failing to submit an issue to the jury to ascertain how much of the defendants' remaining land, if any, exclusive of the easement strips, was injured, damaged, or decreased in value by reason of the taking of the easements in question.

As to Points 1, 2, 3, 4, and 5, the evidence as shown by the testimony of appellees' witnesses, Blakeney and Linebery, reflects that defendant Linebery knew the value of the property from having used and managed it over a period of years, and that the witness C. M. Blakeney was qualified as an expert; that the entire tract was operated as a unit; that it was used for ranching and for other purposes, including the development of caliche pits and water wells for the sale of caliche and water, and the sale of easements and drilling sites; that the value of the remaining land, exclusive of the strips condemned, would be depreciated as a result of the rights acquired by appellant;

that appellant had the right to destroy all vegetation in the right of way, and this would result in erosion; that appellant's right of ingress and egress over appellees' adjoining lands would result in increased traffic over that land and would interfere with appellees' use of the land for ranching, sale of water, caliche, drilling sites, and other easements. The defendant Linebery testified that all of his land had a value of $95 per acre before the taking, and that the damage to the remainder after the taking was at least $1 per acre. The witness Blakeney testified that the value of all of defendants' lands before the taking was $60 per acre, and that the damage to the remaining land varied from a high of $6 per acre on 1,273 acres in the two sections actually crossed by the easement; $1 per acre on 3,520 acres contained in five and one-half sections of land bordering the two sections crossed by the easements; and 10 cents per acre on the remaining land. The witnesses Linebery and Blakeney testified that the easement strips for the transmission line would affect the market value of the remaining 1,273 acres in the two sections actually crossed by the lines to the greatest extent. Linebery said the market value was reduced by $15 per acre, from $95 before the taking to $80 after; and Blakeney testified with respect to the same 1,273 acres that the value of the land before the taking was $60 per acre, and that it had a value of only $54 immediately after the taking, a net loss in market value of $6 per acre. With respect to the five and one-half sections of land adjoining the two sections crossed by the easements, which was shown to contain 3,628 acres, Linebery testified that it had a value of $95 before the taking, and a value of only $90 per acre immediately after the taking, a net reduction in value of $5 per acre. The witness Blakeney, in testifying as to the value of the same five and one-half sections of land, said that it had a value of $60 per acre before the taking, and a value of only $59 per acre immediately after the taking, a net reduction in value of $1 per acre. As to the remaining land, the wit-

ness Linebery testified that it had a value of $95 per acre before the taking, and a value of only $94 per acre after the taking; Blakeney testified to a value of $60 before the taking on the remaining land, and $59.90 after the taking.

On cross-examination, appellant's witness W. G. Marquardt, employed as a district manager by appellant, testified that his company chopped down any trees or growth in the rights of way obtained by them, of such size as might impair the safety of the line; that it was necessary to inspect the lines and to maintain and repair them, and that the company kept a regular maintenance and repair crew for this purpose, and that appellant would use the adjoining land of appellees for ingress and egress upon the easements acquired.

Appellant's witness C. A. Cole, Jr., testified that the highest and best use of the defendants' land in Winkler County was for ranching purposes; that it had a value of $7.50 per acre before the taking of the easement, and that the damage to the remaining land of defendants would be confined to a strip of land 50 feet wide on either side of the easements taken, amounting to 12.74 acres; that the value of the remaining land, to the extent of the 12.74 acres, would be $3.75 per acre after the taking.

■ When courts pass upon an objection based on the excessiveness or insufficiency of the compensation awarded by the verdict, they act on the familiar principle that if there is testimony to support the finding of the jury, the judgment will not be reversed merely because there is a preponderance of the evidence adverse to the finding. 16 Tex.Jur. 612, sec. 278, and cases cited.

■ The testimony of the witnesses for the respective parties indicated both higher and lower values for the remaining land, before and after the easements were affixed, than those found by the jury in its award. In reviewing the record to determine whether there is support for the award, the rule

is that the credibility of the witnesses and the weight to be given their testimony is for the jury.

■ Based upon the evidence, the jury found the value of all the land to be $50 per acre immediately before the easements were affixed. This value was less than that placed upon the land by appellee Tom Linebery and appellees' other witness, C. M. Blakeney, and more than the value placed upon the land by appellant's witnesses. Appellant does not object to the answer of the jury to Special Issue number 7, wherein the jury found the value of the 6.37 acres of land contained in the three easements to be $50 per acre, but levels its objection to the finding of the jury in answer to Special Issue number 9, relating to the value of the remainder of the land, which it found to be $50 per acre. There is no question that the three strips of land were out of, and a part of, the larger tract, and comparable to it. The evidence as to the value of the 6.37 acres, and the value of the remainder of appellees' land, immediately prior to the taking of the easements, was the same. In answer to Special Issue number 10, inquiring as to the value of the remaining land after the easement was affixed, the jury found the value to be $49.75, a diminution in value of 25 cents per acre. We find the jury's answers to Special Issues numbers 9 and 10 to have support in the evidence, and overrule appellant's Points 1, 2, 3, 4, and 5; and, for the same reasons, appellant's Points 6 and 8—which complain that the jury's verdict, in answer to Special Issues 9 and 10, is so excessive as to show that the jury was ruled by passion and prejudice against appellant— are likewise overruled.

■ We also overrule appellant's Point 7. In the case of Texas-New Mexico Pipeline Company v. Linebery, Tex.Civ. App., 326 S.W.2d 733, in a case involving the same ranch lands in Winkler County, we held that it was error for the court to assume as a matter of law that the remaining land constituted a single tract of land for the purpose of assessing damages, where the physical division of appellees' land by a railroad and highway raised the issue of separateness. In the case at hand, however, the trial court excluded from the jury's consideration 4,500 acres of land owned by defendant-appellees lying east of Highway 82, which is paralleled by the right of way of Texas-New Mexico Railroad, and limited the jury's consideration of damages to the remaining land which, according to the stipulations of the parties, contains 22,401 acres, exclusive of the strips condemned. In view of the stipulations of the parties as to the amount of acreage; the testimony of the defendant Linebery to the effect that he was in charge of the land and that it was operated as a unit; the exclusion by the trial court of that portion of the ranch lying east of Highway 82 from the jury's consideration; and the absence of any evidence tending to show more than a nominal division of the remainder of the lands as by section lines, we are of the opinion that the court did not err in assuming that the remaining 22,401 acres constituted a single tract. The general rule is that if the division of the owner's land into sections is merely nominal, as by lots or section lines, the sections are to be treated as actually contiguous or, if the owner's land is divided into two or more parts in such manner as might otherwise raise the issue of separateness, but said parts are devoted to a common use by the same proprietor, the parts will be considered as having been united into a single property by that use, and will be regarded as a whole for the purposes of assessing damages for the taking of a part. See 16 Tex.Jur. 521, sec. 207, and authorities cited.

While appellees may have been entitled to complain of the trial court's action in entirely excluding from the jury's consideration the 4,500 acres of land physically separated from other portions of the ranch by Highway 82, the testimony of the defendant Linebery being to the effect that he was in charge of all the land and that it was operated as a unit, we do not believe any issue of separateness was raised by appellant with

respect to that portion of the land lying west of the Highway and which was considered by the jury in assessing damages to the remainder of the land. Appellant's Point 7 is therefore overruled.

By Points 9 and 10, appellant complains that the trial court erred in permitting counsel for defendants to make an improper argument to the jury, when counsel was permitted to argue that the right of ingress and egress acquired by appellant across defendants' adjoining land ought to be worth something to the owners of the land; and to argue that the only unpaid witness was Blakeney, there being no testimony as to whether the witness Blakeney was paid or unpaid. It was undisputed that appellant acquired a right of ingress and egress across defendants' adjoining lands. It has been held that the right of ingress and egress is one of the elements that may be considered in determining damages to the remainder of the land, and we are of the opinion there was no impropriety committed by counsel for defendant in this connection. An attorney, in argument, may draw any inference from the evidence, acting in good faith, so long as the inference is reasonable. Traders & General Ins. Co. v. Stone, Tex.Civ.App., 258 S.W.2d 409; 41–B Tex.Jur. 276, sec. 235.

There is no evidence as to whether the witness Blakeney was a paid or an unpaid witness; hence we will assume without so holding, that it was improper for counsel for defendant to argue that the only unpaid witness was Blakeney. The challenged argument, even if assumed to be improper, was of such nature that no juror of ordinary intelligence could have been persuaded thereby to agree to a verdict contrary to that which he would have agreed to but for such argument, and reversal on this point would not be in order. McCorstin v. Mayfield, Tex.Civ.App., 274 S.W.2d 874; Rule 434, Texas Rules of Civil Procedure. Appellant's Points 9 and 10 are accordingly overruled.

It is contended by appellant, in Points 11, 12 and 13, that the trial court erred in permitting defendants to offer in evidence, over plaintiff's objections, the testimony of the defendant Linebery and the witness Blakeney, to the effect that plaintiff obtained an unrestricted right of egress and ingress over defendants' adjoining property under the easements, that would permit plaintiff to go anywhere on defendants' ranch they might want to go; that they considered the right of unrestricted egress and ingress as an element of damages in determining the value of the remaining land, and that they did not base their opinion on the right of reasonable egress and ingress. Appellant, in its petition for condemnation, in paragraph 5 thereof, prayed:

"Your petitioner represents that it is necessary for the construction, location, maintenance and operation of said lines that your petitioner acquire, take, hold, use and enjoy an easement of right-of-way 50 feet wide across the above described property, being 25 feet on each side of the center line hereinabove described, together with the right of ingress and egress over and across defendants' adjoining property, for the purpose of a right-of-way for said lines as located, described and designated, together with the right to construct, reconstruct, maintain and operate the apparatuses, poles, guy-wires, insulators, devises and arrangements necessary or proper to maintain, operate, repair or rebuild the same."

While it is undoubtedly true that the law requires the condemnor to exercise the right of ingress and egress in a reasonable manner, it is the condemnor, alone, who determines what land and what interest in land it may condemn for its purposes. Here, the condemnor elected to take, by condemnation, the three strips of land identified in its petition together with, without express limitation, "the right of ingress and egress over and across defendants' adjoining property". In the absence of some con-

stitutional or statutory provision limiting the right to take private property to cases of necessity, it seems to be the settled rule that the discretion of the condemnor is absolute as to what land it may condemn for its purposes, and the courts will not review its discretion in this respect, except where it is made to appear the condemnor has acted in bad faith, or has acted arbitrarily, capriciously, or fraudulently, in selecting the particular land for its purpose. Webb v. Dameron, Tex.Civ.App., 219 S.W.2d 581; Bradford v. Magnolia Pipe Line Co., Tex. Civ.App., 262 S.W.2d 242; Palmer v. Harris County, 29 Tex.Civ.App. 340, 69 S.W. 229.

It was not within the province of the court below to limit the condemnor's right of ingress and egress over and across defendants' adjoining property to any particular route or particular portion of defendants' adjoining land; it being a legislative or political question, not a judicial one, and, therefore, not subject to review by the courts. See 16 Tex.Jur. 395, sec. 125, and authorities cited.

We find no support for appellant's complaint of error in Points 11, 12 and 13, and are of the opinion that, if the action complained of was error, it was harmless. These points are accordingly overruled.

By Points 14 to 19, inclusive, appellant contends that the trial court erred in permitting defendant to offer in evidence secondary oral proof of the sales of other lands without showing that said sales were made at such time as to permit their proof, and because the witness' knowledge of such sales was based on hearsay; and because there was no showing that the sales were of comparable land and of comparable size.

The record reflects that the witness Blakeney was duly qualified as an expert on land values in Winkler County and that, in arriving at the values he attributed to the land in question, he considered the uses of the land, read newspapers containing accounts of the sales of land in the county, examined the records contained in the coun-

ty clerk's office, and had seen some of the original instruments of conveyance, under which tracts 20 feet wide and located in the same sections as the strips sought to be condemned, had sold for $4.75 to $6.75 per rod; that some small tracts were leased for $150 per acre per year, and large tracts for $50 per acre per year. Appellee Linebery testified to the same effect—that he had sold five rights of way to people who did not possess power of eminent domain, each of which was 20 feet wide, and were as follows: (1) approximately 600 rods in length, for $3,000; (2) approximately 380 rods in length, for $3,000; (3) approximately 480 rods in length, for $4,000; (4) approximately 475 rods in length, for $5,000; and (5) approximately 640 rods in length, for $3,000. All five of these rights of way were located in Sections 1 and 18, the identical sections of land from which the three strips sought to be condemned are located. The record as a whole reflects that all the lands involved in this suit were of substantially the same general character. While plaintiff's witness placed a lower per acre value on the lands than did defendants' witnesses who testified as to the value of lands, none of the witnesses drew any appreciable distinction between the value of the land located in one part of the ranch, and land located in any other part or portion of the ranch. Witness Linebery testified that he had made other sales in the same area to various people for drilling sites, for prices ranging from $300 to $750 for one and two-acre tracts, and that all the sales about which he testified were made on or about September 7, 1957, which was the date of the original condemnation proceeding. Plaintiff objected to the testimony of the witness Blakeney, as to sales of other easement strips, on the ground that it was not the best evidence; further, that the sales were not comparable sales, the easements being only 20 feet wide, while the easements sought to be condemned were 50 feet wide. Further, that the sales were of tracts containing one and two acres, and were not comparable sales for the purpose of establishing the value of the

remainder of the land. Substantially the same objections were leveled at the testimony of the witness Linebery with respect to values.

█ We are of the opinion that the objection based on the best evidence rule would have no application here. Neither of the witnesses was attempting to prove the contents of the instruments under which the various grants had been made; the instruments themselves were only collaterally involved. Both witnesses testified that they knew the prices for which the various grants were sold. The witness Linebery obviously testified from personal knowledge, for he had either executed the instruments or negotiated their sale. The witness Blakeney testified that he had seen the original instruments, examined courthouse records, and had made other investigations. Undoubtedly, his testimony as to the price paid for the easements was based on hearsay, since it was not shown that he had witnessed the payment of the money. However, his testimony was general in nature, he made no attempt to detail specific sales, and it would go to the weight, rather than the admissibility, of such testimony. There was no controversy as to the contents of the instruments, and this was a matter for the trial judge's discretion. Texas Law of Evidence, McCormick & Ray (1st ed.), Chapter 29, section 710, page 923 et seq.

█ The easements sought to be condemned consisted of three separate tracts 50 feet in width, containing approximately four and one-half, one and one-half, and one-half acres of land, respectively. The five easements, while only 20 feet wide, were of comparable area and meet the test, in that they were shown to be vicinal sales of land similar to the tracts sought to be condemned. We are of the opinion that such evidence was clearly admissible for the purpose of establishing a market value for the land actually taken.

█ The purpose of testimony of sales of comparable property is to provide a means of testing the knowledge and qualifications of the witness to testify as to market value of the property condemned, and the trial court has wide discretion in admitting such testimony. The admissibility of the evidence is for the court, while the credibility of the witness and the weight to be given his testimony is for the jury, alone.

Appellees contend that the land in question was used for other purposes, as well as for ranching purposes, including the sale of easements, right of way, and drilling sites. The evidence reflects that extensive oil and gas production and exploration activity was being conducted on defendants' land by various companies and individuals, under numerous oil and gas leases, as depicted and shown by plaintiff's exhibit number 10. The extent to which the defendants' lands are shown to have been developed for oil and gas purposes under separate oil and gas leases renders the surface of the land adjoining the individual leases peculiarly adaptable for the sale of ways of convenience across adjoining lands, to the owners and operators of the respective leases. We are of the opinion, therefore, that the testimony was likewise admissible for the purpose of showing one of the uses to which the land was adapted. Appellant's Points 14 to 19 are overruled.

█ Appellant contends, in Points 20 and 21, that the trial court erred in permitting defendants to offer in evidence the testimony of the defendant Tom Linebery, of acts and omissions on the part of plaintiff, which plaintiff contends constituted negligence and the basis for independent legal actions; and testimony to the effect that plaintiff had exceeded the rights acquired under other easements across defendants' lands.

We have examined the testimony of the witness Linebery, complained of by appellant, and which has been set forth in appellant's brief. We are unable to agree with appellant's contention that this testimony was improper. The position taken by ap-

pellant throughout the trial of this case was to the effect that, although appellant acquired the right of ingress and egress across the adjoining lands of defendants, plaintiff would be required to exercise these rights in a reasonable and prudent manner; and there was testimony from appellant's witnesses to the effect that, to obtain access to certain easements, appellant's agents and employees used a particular route or routes to get there from the closest point on a public road or highway. The questions, as framed by defendants' counsel, inquired whether or not appellant used defendants' lands, other than the right of way across which they build their high-line. The witness answered, "they do use other lands." To the question, "How far have you actually seen them from the right of ways they have acquired?" the witness replied: "Through the years, I have seen Texas Electric vehicles two or three miles from some of their right of ways personally. I have seen them through the years over most of that country; that general area there where they do have existing lines." These inquiries and the testimony elicited do not infer that appellant did anything more than it had a right to do on defendants' land. It is, however, evidence of the manner in which appellant exercises its right of ingress and egress over defendants' adjoining lands.

Defendants' counsel also inquired of the witness regarding the particular three lines sought to be condemned. He developed from the witness that, since on or about September 6, 1957, he had observed appellant using other land as far as approximately a mile from the rights of way in controversy, and not at places on his ranch where appellant possessed existing rights of way. The witnesses Blakeney and Linebery having testified that the right of ingress and egress acquired by appellants over and across defendants' adjoining land constituted an additional burden on the land, we are of the opinion that evidence tending to show the manner and extent to which these rights would be exercised by appellant, was

properly admitted by the trial court. For the reasons stated, appellant's Points 20 and 21 are overruled.

Under appellant's Point 22, it is urged that the trial court erred in permitting counsel for defendant to lead the defendant Tom Linebery in his testimony and suggest that said witness give an affirmative answer to the inquiry of counsel designed to ascertain if all the lands of Tom Linebery in Winkler County were operated as a unit. The particular question complained of, which is set out in appellant's brief, is undoubtedly leading and suggestive, and the objection thereto should have been sustained. We consider this error harmless, however, for the reason that the witness had previously testified, without objection, that all the land involved in this suit was operated as a unit. The point is not sufficient to warrant a reversal and is, accordingly, overruled.

We have considered appellant's Point 23, which complains that the trial court erred in permitting defendant Tom Linebery to express his legal opinion as to whether his acts and the acts of the general public constituted a dedication of a public road. The point is not supported by the record, and is accordingly overruled.

We have examined the testimony of the appellant's witness, R. S. Beard, elicited on cross-examination by defendant's counsel, about which appellant complains in Point 24, directed at certain questions propounded by counsel for defendants designed to determine whether appellant would require or need the entire 50-foot-wide easement in its operations. While the questions may have been improper, we are unable to find an element of harm in the answers elicited.

In addition, appellant's counsel, on direct examination of the same witness, was permitted to propound questions, over the objections of defendants' counsel, as to whether appellant in the operation and maintenance of existing lines, as well as the lines on the strips being acquired by con-

demnation, would require or need, or ever have occasion, to pass over and use certain portions of defendants' lands to get to their lines. There being no harm shown, appellant's Point 24 is overruled.

It is the contention of appellant, in Points 25 and 26, and by appellant's Bill of Exception No. 4, that the trial court erred in orally stating to the jury, but not as a part of the court's written charge, nor in response to a request from the jury, that they could take any and all written evidence to the jury room with them; and in permitting the bailiff to deliver to the jurors, after they retired for their deliberation, the written evidence theretofore introduced in the case, together with a blackboard upon which counsel for both plaintiff and defense had made a memorandum of certain evidence.

Since the statement of facts does not reflect what transpired, we must, in passing upon Points 25 and 26, rely entirely upon appellant's Bill of Exception No. 4. It appears that after the court's written charge had been read to the jury, and before the jury had retired for its deliberations, one of the jurors, a Mr. Wayne Adams, asked the court if the jury would be permitted to take a blackboard, upon which counsel for both plaintiff and defense had made memoranda of certain evidence, to the jury room; whereupon, the court orally informed the jury that they could take the blackboard to the jury room, and all of the other written evidence. Thereafter, the court, without an additional request from the jury, either oral or in writing, permitted the bailiff to deliver all of the written evidence to the jury.

Rule 281, Texas Rules of Civil Procedure, provides that the jury may take with them in their retirement the charge and instructions, general or special, which were given or read to them, and any written evidence except the depositions of witnesses.

Appellant's objections and exceptions to the court's action in regard to the above matters do not appear to have been made until after the bailiff had delivered the blackboard and all the written evidence to the jury room. We are of the opinion that, under the circumstances, no error was committed by the trial court in permitting all of the written evidence to be delivered to the jury room. The blackboard, upon which counsel for both plaintiff and defendants had made memoranda of certain evidence, was not evidence, and it was improper for it to be taken to the jury room. Appellant's bill of exception, however, does not disclose the context of the writings or memoranda alleged to have been on the blackboard. A party complaining of alleged error in the reception by the jury of written matter not introduced in evidence has the burden of proving, not only that the error occurred, but also of showing that injury probably resulted therefrom. Rule 327, Texas Rules of Civil Procedure.

Viewing the record as a whole in considering the points raised by appellant, we find no reversible error, and the judgment of the trial court is affirmed.

ABBOTT, J., not sitting.