# NO. 12-13-00307-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ENBRIDGE G & P (EAST TEXAS) L.P.,*<br>*APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | | |
| *BEN SAMFORD AND WIFE, BETTE*<br>*ANN SAMFORD, CECIL JACKSON*<br>*AND WIFE, MICHELLE JACKSON*<br>*AND SAMMY MONK,* | § | *JUDICIAL DISTRICT COURT* |
| *APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

## *OPINION*

This is a condemnation case involving three tracts of land with separate ownership. Enbridge G & P (East Texas) L.P. appeals an award of damages in favor of the landowner condemnees, Ben Samford and wife, Bette Ann Samford; Cecil Jackson and wife, Michele Jackson; and Sammy Monk. In six issues, Enbridge complains of charge error and the failure of the trial court to exclude inadmissible damage testimony. We reverse and remand.

## BACKGROUND

Enbridge brought three separate actions seeking to condemn a fifty foot gas pipeline easement and a twenty-five foot temporary easement across the three tracts owned by the landowners. Enbridge objected to the commissioners' awards in all three cases. The trial court then consolidated the three actions.

The only contested issues were the value of the parts taken and the reduction in value of the remainders because of the taking. All three tracts were rural mixed pasture or woodland. The landowners and Enbridge each called one appraisal witness who gave their opinion of the value of the part taken and damages to the remainder based on comparable sales of similar

property. Both Jake Lyon for the landowners and Ronnie Harris for Enbridge testified that the "highest and best use" of all three tracts was rural residential or agriculture.

Jake Lyon valued the Samford and Jackson tracts at the time of the taking at $2,200.00 per acre. He estimated the value of the Monk tract at $2,000.00 per acre. In his opinion, the value of the part taken for the permanent easement was diminished by ninety percent, and the part taken for the temporary easement by fifty percent. He testified that the value of the remainder of the tracts was reduced by $400.00 per acre.

Ronnie Harris testified that he valued the Samford and Jackson tracts at $3,500.00 per acre and the Monk tract at $3,600.00 per acre. He agreed with Lyon that the taking reduced the value of the part taken for the permanent easement by ninety percent and the part taken for the temporary easement by fifty percent. However, based on his comparable sales data, Harris found no damage to the remainders of any of the subject properties.

The landowners also called Wesley Hoyt to testify to "what a gas pipeline is worth." Hoyt was a lawyer and the County Attorney of San Augustine County. Enbridge moved to exclude Hoyt's report and testimony before trial contending that he was unqualified to give an opinion on market values. Enbridge also maintained that the per rod methodology he employed was unacceptable, irrelevant, and unreliable. The trial court overruled Enbridge's motion. Enbridge unsuccessfully reiterated its objections at trial.

Hoyt testified that he based his opinion on the numerous occasions he had negotiated sales of pipeline easements "before it got into litigation," and his conversations with hundreds of landowners. He rejected the traditional market value approach because "that standard manner of valuation is not true, and not accurate, because that's not what actually happens out here in the real world in the industry."

Hoyt testified that, based on his general knowledge, the going price paid in the industry was $850.00 per rod. Hoyt indicated that $850.00 per rod included the value of the easement taken, the temporary easement, damage to the remainder, and "everything that goes on with these easements." Hoyt brought no comparable sales of pipeline easements or other data to support his opinion.

The trial court also overruled Enbridge's objections to the testimony of Lynwood Smelser. Smelser testified about the cost to permanently repair damage caused to the creek banks in the permanent easement areas of the Samford and Monk tracts caused by the pipeline

construction. Smelser stated that to repair the damage to prevent erosion would require that the creek banks be rip-rapped over filter fabric and the disturbed area hydro-mulched with erosion seed blend and fertilizer. He stated that the cost for these repairs was $380.00 per foot for 231 feet or a total of $87,700.00 on the Samford easement. He estimated that similar repairs on the 181 feet of creek bank in the Monk easement would cost $68,700.00. Smelser was also asked to estimate the cost of bringing in enough fill dirt to construct a two foot pad for four chicken brooder houses that Jackson said he wanted to build on his tract. In Smelser's opinion, the pipeline complicated getting the dirt required on the Jackson property. To build the pad, he said, would require the purchase of 10,785 cubic yards of fill at $8.00 per cubic yard or a total of $86,286.00. However, Smelser did not testify to before and after market values, and he cannot be considered a valuation witness.

The testimony of the value witnesses can best be shown and compared by the charts below.

**Samford 94.32 acres (3.023 acre permanent easement; 2.528 acre temporary easement)**

| Witness | Value per acre | Value part taken | Value Temporary Easement | Remainder Damages | Total Compensation |
|---|---|---|---|---|---|
| Lyon | $2,200.00 | 5,9867.00 90% reduction | 2,781.00 50% reduction | 38,840.00 | $45,407.00 |
| Harris | $3,500.00 | 9,522.00 90% reduction | 4,424.00 50% reduction | 0 | $13,946.00 |
| Hoyt | n/a | $850/rod    X    159.02 rods | | n/a | $135,677.00 |

**Jackson 63.5359 acres  (.847 acre permanent easement; .475 acre temporary easement)**

| Witness | Value per acre | Value part taken | Value Temporary Easement | Remainder Damages | Total Compensation |
|---|---|---|---|---|---|
| Lyon | $2,200.00 | 1,677.00 90% reduction | 523.00 50% reduction | 25,708.00 | $27,908.00 |
| Harris | $3,500.00 | 2,668.00 90% reduction | 417.00 25% reduction | 0 | $3,085.00 |
| Hoyt | n/a | $850/rod    X    44.713 rods | | n/a | $38,006.00 |

3

**Monk 34.31 acres   (.858 acre permanent easement; .558 acre temporary easement)**

| Witness | Value per acre | Value part taken | Value Temporary Easement | Remainder Damages | Total Compensation |
|---|---|---|---|---|---|
| Lyon | $2,000.00 | 1,544.00 90% reduction | 558.00 50% reduction | 12,823.00 400/a | $14,925.00 |
| Harris | $3,600.00 | 2,780.00 90% reduction | 1,004.00 50% reduction | 0 | $3,784.00 |
| Hoyt | n/a | $850/rod     x | x 45.303 rods | n/a | $38,508.00 |

The charge given required the jury to answer two questions:

Question No. 1
What was the market value of the pipeline easement condemned on each of the tracts named below?

Question No. 2
What was the damage, if any, to the remainder of the tract named below as a result of the taking of the pipeline easement?

Enbridge objected to Question No. 1 and urged the court to ask the jury to determine "the difference in fair market value of the permanent easement immediately before the taking and immediately after the taking." The court overruled Enbridge's objection and denied its requested submission.

The jury's verdict is reproduced below showing the jury's notations thereon.

Question No. 1
What was the market value of the pipeline easement condemned on each of the tracts named below?

Answer in dollars and cents for each tract named below.
A.  The Samford tract

Answer:     $135,677.00        ($850 per rod-including damages)

B.  The Jackson tract

Answer:     $26,827.80        ($600 per rod – no damages)

C. The Monk tract

Answer:     $27,181.80     ($600 per rod – no damages)


Question No. 2

What was the damage, if any, to the remainder of the tract named below as a result of the taking of the pipeline easement?

Answer in dollars and cents, if any, for each tract named below.

A. The Samford tract

Answer:     $23,580.00     $200 per acre

B. The Jackson tract

Answer:     $12,707.18     $200 per acre

C. The Monk tract

Answer:     $6,862.00     $200 per acre


From the notations on the jury charge, it is apparent that the jury followed Wesley Hoyt's testimony in determining the value of the part taken, the easement area. Hoyt's $850.00 per rod estimate comprehended all compensation due the landowners by reason of the taking including the value of the part taken and damage to the remainder. Nevertheless, the jury also found $200.00 per acre damage to the remainders.


## WESLEY HOYT'S REPORT AND TESTIMONY

In its fourth issue, Enbridge contends that the trial court reversibly erred in admitting the report and testimony of Wesley Hoyt, a value witness for Appellees. In his report and testimony, Hoyt made no effort to separately assess the diminution of the market value of the part taken, the easement strip, and the reduction in fair market value of the remainder of the entire tract because of the taking. Instead, Enbridge argues, Hoyt specifically rejected diminution in the fair market value as the appropriate measure of compensation for the taking. Hoyt estimated the landowners' total damages because of the taking at the average linear amount per rod that, according to his experience, was the "real world" going rate for pipeline easements. Enbridge asserts that in ignoring diminution in fair market value of the property affected, the appropriate measure of damages, Hoyt avoided all three of the long accepted methods of estimating those

5

damages. Therefore, Enbridge insists, Hoyt's report and testimony were based upon an unaccepted and improper methodology and should have been excluded by the trial court.

**Standard of Review**

The trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718-19 (Tex. 1998). We reverse a judgment for the erroneous admission of an expert's testimony only if we conclude the error probably caused rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

To be admissible, expert testimony must be relevant to the issues in the case and must be based upon a reliable foundation. TEX. R. EVID. 702; *Gammill*, 972 S.W.2d at 720. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Expert testimony that has no relationship to any of the issues in the case is irrelevant because it does not satisfy the Rule 702 requirement that the testimony be of assistance to the jury in understanding the evidence or determining a fact in issue. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). The trial court has the threshold responsibility under Rule 702 "of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Gammill*, 972 S.W.2d at 728. The relevance and reliability requirements of Rule 702 apply to all expert evidence offered under the rule, although the criteria for assessing relevance and reliability must vary depending on the nature of the evidence. *Id.*, 972 S.W.2d at 727.

Rule 702's reliability requirement focuses on the principles, research, and methodology underlying an expert's conclusions. *Zwahr*, 88 S.W.3d at 629. When the expert's underlying methodology is challenged, the court looks beyond what the expert said to evaluate the reliability of his opinion. *Coastal Transp., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). Expert testimony is unreliable if it is no more than subjective belief or unsupported speculation. *Zwahr*, 88 S.W.3d at 629. Expert testimony must have a reliable basis in the knowledge, experience, methods and procedures recognized within the discipline involved.

6

***Gammill***, 972 S.W.2d at 725-26.  If there is too great an analytical gap between the data relied upon and the opinion offered, the expert's testimony is unreliable.  ***Zwahr***, 88 S.W.3d at 629.  An expert's testimony is unreliable even when the underlying data is sound if the expert's methodology is flawed. ***Helena Chem. Co. v. Wilkins***, 47 S.W.3d 486, 499 (Tex. 2001).

**<u>Applicable Law</u>**

Compensation for land taken by eminent domain is measured by the market value of the land at the time of the taking.  ***Zwahr***, 88 S.W.3d at 627; ***Heddin v. Delhi Gas Pipeline***, 522 S.W.2d 886, 888 (Tex. 1975); *see also* TEX. CONST. art. I, § 17 (guaranteeing "adequate compensation" to landowners whose property is condemned).  "Market value" is defined as the price that the property would bring when it is offered for sale by one who desires but is not obligated to sell and is bought by one who is under no necessity of buying.  ***City of Harlingen v. Sharboneau***, 48 S.W.3d 177, 182 (Tex. 2001).   The three traditional approaches to the determination of market value are the comparable sales method, the cost method, and the income method.  ***Id***.  The fact finder is entitled to consider every factor that would affect the price for which a willing buyer and seller would exchange for the property.  ***City of Fort Worth v. Corbin***, 504 S.W.2d 828, 830 (Tex. 1974).  However, the fact of condemnation must be excluded.  ***Id.*** "[F]air market value must, by definition, be computed as if there were no proceedings [in condemnation] to eliminate that market."  ***Id.***  No matter what appraisal method an expert uses, the object of the inquiry is always to find the fair market value of the property; an appraisal method is valid only if it produces an amount that a willing buyer would actually pay a willing seller.  ***Sharboneau***, 48 S.W.3d at 183.  Testimony of a witness who uses an unauthorized and improper valuation method should be excluded.  *See* ***State v. Meyer***, 403 S.W.2d 366, 375-76 (Tex. 1966); ***Tex. Fruit Palace v. City of Palestine***, 842 S.W.2d 319, 323 (Tex. App.—Tyler 1992, writ denied).  "The objective of the judicial process . . . is to make the landowner whole and to award him only what he could have obtained for his land in a free market."  ***Corbin***, 504 S.W.2d at 831.

In determining the market value of the property, the fact finder may consider the highest and best use to which the land is adapted.  ***Zwahr***, 88 S.W. 3d at 628.  "Highest and best use" is "the reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible and that results in the highest value."  ***City of Sugar Land v. Home and Hearth Sugarland, L.P.***, 215 S.W.3d 503, 511 (Tex.

App.—Eastland 2007, pet. denied). Consideration must be given to "all of the uses to which the property is reasonably adaptable and for which it is, or in all reasonable probability will become, available in the foreseeable future. *Id*. Consideration cannot be given to uses that are speculative and unavailable. *See City of Austin v. Cannizzo*, 267 S.W.2d 808, 814 (Tex. 1954). The existing use of the land is its presumed highest and best use. *Zwahr*, 88 S.W.3d at 628. However, the landowner can rebut this presumption by showing "a reasonable probability that when the taking occurred, the property was adaptable and needed or would likely be needed in the near future for another use." *Id.*; s*ee also United States v. 8.41 Acres of Land*, 680 F.2d 388, 394-95 (5th Cir. 1982).

An economic unit is that portion of the property that is sufficient standing alone to support the highest and best use, independent of the remaining portions of the whole property. *Zwahr*, 88 S.W.3d at 628. Three factors aid in determining whether the part taken is part of a single larger tract: physical contiguity, unity of ownership, and unity of use. *8.41 Acres*, 680 F. 2d at 393. "When an owner actually uses parts of what would otherwise constitute a unified tract for different or separate purposes, . . . the parts may be held to be functionally 'separate' tracts [or economic units], though they are not physically separate." *Id*. "Integrated use is the key test for unity of a tract." *Id*.

When only a part of the tract is taken, the "just compensation" to which the owner is entitled consists of two elements: (1) the market value of the part taken, and (2) the diminution in value of the remainder due to the taking and construction of the improvement for which it was taken. *See State v. Windham*, 837 S.W.2d 73, 75-76 (Tex. 1992); *State v. Carpenter*, 89 S.W.2d 194, 197 (Tex. 1936). In the case of a partial taking, the part taken for the easement is to be considered as "severed land," but is to be valued as a proportionate part of the parent tract or economic unit to which it belongs*. Zwahr*, 88 S.W.3d at 628; *Windham*, 837 S.W.2d at 76; *City of Tyler v. Brogan*, 437 S.W.2d 609, 612-13 (Tex. App.–Tyler 1969, no writ). However, where the part taken is a self-sufficient economic unit, its value should be determined by considering the part taken alone, and not as a portion of the entire tract of which it was a part. *Meyer*, 403 S.W.2d at 375.

Ordinarily, a landowner has a right to claim consequential or severance damages to the entire remainder of the parent tract provided it is contiguous to the part taken and there is unity of use. *Sw. Bell Tel. Co. v. Ramsey*, 542 S.W.2d 466, 472 (Tex. Civ. App.–Tyler 1976, writ

ref'd n.r.e.). But he is not compelled to do so. *Id.* Where a substantial portion of the remainder is suitable to some higher or better use, such as a commercial or industrial use, and the other part of the remainder is not suitable for the same purpose, the landowner is permitted to claim remainder damages to only that portion of the remainder suitable for the higher use. *Id*. The new economic unit created from the parent tract thus becomes the appropriate unit from which to determine the market value of the severed tract. *See id*. However, the condemnor also has the right to offer competing evidence as to the appropriate economic unit to be considered by the jury in deciding the market value of the part taken. *Windham*, 837 S.W.2d at 76.

When, as in the instant case, an easement is taken for a pipeline, a power line, or similar purposes, the owner is left with some beneficial use of the part taken. In such a case, the damages for condemnation will be, as a matter of law, less than the full value of the fee.[1] *Thompson v. Janes*, 251 S.W.2d 953, 956 (Tex. 1952); *McClain v. Elm Creek Watershed Authority*, 925 S.W.2d 756, 758 (Tex. App.—Austin 1996, no writ). Therefore, the proper measure of damages is the difference in value of the part taken (the easement strip), considered as severed land, before the taking, and the value of the same tract considered as severed land after the taking (now burdened by the easement). *Callejo v. Brazos Elec. Power Coop., Inc.*, 755 S.W.2d 73, 76 (Tex. 1988); *Thompson*, 251 S.W.2d at 955-56; *McClain*, 925 S.W.2d at 759. The post-taking value of the part taken for the easement naturally will vary according to the purpose of the easement.

When a partial taking occurs, as is the case with an easement, the landowner is entitled to any diminution in the fair market value of the remainder of the tract lying outside the part taken.[2] *Zwahr*, 88 S.W.3d at 627. The parties "have the right to introduce evidence of everything that would tend to affect the value of the land, in the estimation of a proposed purchaser, or that would tend to make it more or less valuable to the present owner. . . ." *Carpenter*, 89 S.W.2d at 199; *Home and Hearth*, 215 S.W.3d at 514-15. "But this evidence is introduced, not as constituting a measure of damages, but as elements to enable the jury to arrive at the correct measure, which . . . is the lessened value of the tract, if any, caused by these different

---

[1] A distinction must be drawn, however, between such easements, and easements that deprive the landowner of any beneficial use of the land. *Thompson v. Janes*, 251 S.W.2d 953, 956 (Tex. 1952). In the latter class of easements, the owner may recover as damages the full value of the land. *Id.*

[2] Since the landowner has the burden of proving damages, he has a right to waive severance damages to any part or all of his remaining land. *Meyer*, 403 S.W.2d at 374.

elements. . . ." *Carpenter*, 89 S.W.2d at 199; ***Home and Hearth***, 215 S.W.3d at 514-15. The ***Carpenter*** court cautioned that the measure of damages must not be confounded with the elements of damage, which are admitted into evidence only to enable the jury to determine the diminution in the market value of the remainder. *Carpenter*, 89 S.W.2d at 198.

**Discussion**

The jury issues in a partial taking for a pipeline easement are the diminution in the fair market value of the part taken considered as severed land, and the diminution, if any, in the fair market value of the remainder because of the taking. *Id.* at 197. This requires the jury to determine the value of the part taken, the easement strip, immediately before the taking, and, if the landowner retains some beneficial use in the part taken, its value immediately after the taking. *Id.* When remainder damages are claimed, the jury must also arrive at the fair market value of the remainder before and after the taking. *Id.* The difference in the before and after values of the part taken and the remainder is the diminution in the fair market value of the property (the before and after rule). *Zwahr*, 88 S.W.3d 627. The goal is always to find the fair market value of the condemned property. *Sharboneau*, 48 S.W.3d at 183. An appraisal method is not valid unless it is produces before taking and after taking estimates based fair market value, what a willing buyer would actually pay to a willing seller. *Id*.

Hoyt's unequivocal rejection of fair market value of the land taken or damaged as the goal in arriving at just compensation for the landowner is best demonstrated by his testimony during cross examination.

> Q. Now, you said, I think just a moment ago, that you don't believe it would be fair to determine damages for this case based upon the standard market value analysis done by real estate appraisers?
>
> A. That's not - - that standard manner of valuation is not true, and not accurate because that's not what actually happens out here in the real world in the industry.

Lyon, the other value witness for the landowners, estimated the diminution in market value of the part taken and the remainder using comparable sales, one of the three accepted appraisal methods. Hoyt was asked if he disagreed with Lyon's fair market value approach.

Q. Now, but you, it's your opinion today, that that type of testimony is just - - I think you just said it's wrong; is that what you said?

A. Well, it is wrong.

Q. Okay. So - -

A. It's not accurate. It's certainly not truthful in the real world context of getting an actual value.

Later he testified that "the methodology employed by appraisers may be truthful under their rules, but the applicability of those rules to this type of measure as to value [is] inappropriate, in my opinion."

In regard to traditional approaches to the determination of market value, he opined, "From what I've heard of appraisers in the past that make these comparisons from apples to oranges [comparable sales], the answer is no, I don't think it's appropriate." In expressing his opinion that a comparable sales approach was inappropriate, in fact impossible, Hoyt stated, "[H]ow are you going to compare these three strips of land that are 100 feet wide, hundred[s] of yards long, to a square block over here in another part of the county?" In repudiating the preferred comparable sales approach to the valuation of the part taken for the easement, Hoyt ignored long settled Texas law that answers the question he posed. Where the part taken is not a self-sufficient economic unit, as is the case here, its value is determined by evaluating it as a proportionate part of that part of the parent tract that constitutes an economic unit. *Zwahr*, 88 S.W.3d at 628; *see also* *Windham*, 837 S.W.2d at 76; *Brogan*, 437 S.W.2d at 612-13.

Neither Hoyt's report nor his testimony spoke to the separate issues the jury was required to answer. He did not attempt to value the part taken as severed land nor did he separately assess the diminution in the market value of the remainder. Hoyt, instead, combined the value of the part taken and the consequential damages to the remainder and expressed his opinion of total damages, including both elements of recovery, at $850.00 per linear rod for all of the tracts. The danger that such confusion of the two elements of recovery might result in double damages (as happened in this case) moved the *Carpenter* court to mandate the separate submission of (1) the value of the part taken as severed land and (2) the consequential damages to the remainder. *Carpenter*, 89 S.W.2d at 197. In the instant case, the jury obviously followed Hoyt's testimony and valued the parts taken per rod but also awarded damages to the remainder.

It should be evident that it is impossible for a jury to separately assess the before and after values of two areas, the part taken and the remainder, given only an amount of damages per linear rod of pipeline. Nor can the per rod damage amount translate into information the jury can use in deciding the two issues.

The distortion and unreliability inherent in Hoyt's per linear rod approach is obvious in the instant case. Almost always a pipeline will cross tracts of varying sizes and shapes. A pipeline may traverse a large tract for a short distance while requiring a greater distance to cross a smaller one. Therefore, there is generally little or no relation between the length of the pipeline easements and the size and value of the remainders created. The Jacksons' 63.5359 acre tract was approximately two-thirds the size of the Samfords' 94.32 acres. But under Hoyt's method, the Samfords' estimated damages were three and one-half times the damages estimated to be due the Jacksons. In contrast, Jake Lyon, the landowners' other value witness, used an authorized and accepted appraisal method and applied the before and after rule in estimating damage. Lyon determined that the Jacksons' recovery should be sixty percent of the Samfords. His valuation was roughly in proportion to the size of the two tracts when allowance is made for the greater size of the Samford part taken. Under Hoyt's approach, the estimated compensation due Monk for his 34.31 acre was slightly more than that due the Jacksons for their 53.5359 acres. Lyon's accepted methodology, on the other hand, produced total damage estimates roughly in proportion to the size of the two tracts.

In *Texas Electric Service Company v. Linebery*, 327 S.W.2d 657 (Tex. Civ. App.—El Paso 1959, writ dism'd), cited by Appellees, the landowner and his value witness testified to sales of other easements nearby and on the subject property priced per rod. *Id.* at 664-65. The court overruled the condemnor's inappropriate objections that their testimony violated the best evidence rule and that the easements were not comparable. *See id.* However, unlike Hoyt's testimony in the instant case, the *Linebery* witnesses separately estimated the value of the part taken and the consequential damage to the remainder, and both, unlike Hoyt, expressed their opinions in per acre terms. *See id.* at 664. We have found no case involving a partial taking, other than *Linebery*, where per rod valuation testimony was accepted.

We are aware that a compensation expressed per rod is common in pipeline easement negotiations. But, in partial taking cases, such a methodology is plainly unsuitable and contrary to long established case law. While a per rod valuation method may be a useful and common

12

shorthand in pipeline easement negotiations, in a case of partial taking, it is inapposite to the jury's task and therefore unacceptable.

Hoyt claimed he premised his opinion that $850.00 per rod represented just compensation to the landowner on over twenty years of negotiating numerous unspecified pipeline easement acquisitions. Yet he supported his opinion with no example from any of the acquisitions. On cross examination, Hoyt was asked for underlying facts or data supporting his opinion. He provided none. Hoyt stated that the negotiations in which he had participated generally had been conducted by telephone and any resulting documentation probably would show only a nominal consideration. Even if Hoyt's methodology were acceptable, which it is not, his bald assurance that he knew what pipeline easements were worth, unsupported by underlying facts or data, amounted to no more than a bare conclusion.

Hoyt unequivocally rejected the loss in fair market value as the measure of just compensation to the landowners. He denied that the traditional mandated approach based upon the before and after values of the part taken and the remainder was a valid "real world" method applicable to pipeline cases. Hoyt's method was not based on land values that a willing buyer would pay a willing seller. His testimony that, in his experience, pipeline companies paid $850.00 per rod for pipeline easements did not relate to the issues the jury was charged to resolve. His report and testimony did not address the highest and best use of the property, how or why the easement taking damaged the remainder, nor any of the other subsidiary questions that the jury might have considered in reaching its verdict.

Hoyt's report and testimony could not have assisted the jurors in addressing the issues they were charged to resolve. But their verdict shows that his per rod approach served to confuse them. The objective of the judicial process in condemnation "is to make the landowner whole and to award him only what he could have obtained for his land in the free market." **Corbin**, 504 S.W.2d at 831. Hoyt's method was not designed to achieve this objective. His report and testimony were neither relevant nor reliable and were therefore inadmissible. *See* TEX. R. EVID. 702. Consequently, the trial court abused its discretion in failing to exclude them. Because it is apparent from the jury's verdict that the jurors relied on Hoyt's report and testimony, the trial court's error was harmful. *See* TEX. R. APP. P. 44.1(a)(1) (judgment reversible on appeal if error complained of probably caused rendition of improper judgment). Enbridge's fourth issue is sustained.

## DISPOSITION

Our disposition of Enbridge's fourth issue makes it unnecessary for us to address Enbridge's remaining issues. Having sustained Enbridge's fourth issue, we *reverse* the judgment of the trial court and *remand* the cause for a new trial.

**BILL BASS**
Justice

Opinion delivered July 31, 2015.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JULY 31, 2015

NO. 12-13-00307-CV

**ENBRIDGE G & P (EAST TEXAS) L.P.,**
Appellant
V.
**BEN SAMFORD AND WIFE, BETTE ANN SAMFORD,
CECIL JACKSON AND WIFE, MICHELLE JACKSON,
AND SAMMY MONK,**
Appellees

Appeal from the 273rd District Court

of Shelby County, Texas (Tr.Ct.No. 10CV31,096)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court for a new trial, and that all costs of this appeal are hereby adjudged against the Appellees, **BEN SAMFORD AND WIFE, BETTE ANN SAMFORD, CECIL JACKSON AND WIFE, MICHELLE JACKSON, AND SAMMY MONK,** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Neeley, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*