

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00134-CV

**TC&C REAL ESTATE HOLDINGS, INC.,**

                                                            **Appellant**

 **v.**

**ETC KATY PIPELINE, LTD.,**
**AS SUCCESSOR IN INTEREST TO**
**ETC TEXAS PIPELINE, LTD.,**

                                                            **Appellee**

### From the 87th District Court
### Limestone County, Texas
### Trial Court No. 27,197-B

## MEMORANDUM  OPINION

On February 23, 2004, ETC Texas Pipeline, Ltd.[1], filed a Statement and Petition in Condemnation against TC&C Real Estate Holdings, Inc.  After a hearing, the Special Commissioners awarded TC&C $2591.00 as compensation for the easements sought by

---

[1] ETC Texas Pipeline, Ltd.'s Petition in Condemnation was amended to reflect ETC Texas Pipelines, Ltd.'s Conveyance, Assignment and Bill of Sale to ETC Katy Pipeline, Ltd.  ETC Texas Pipeline and ETC Katy Pipeline are collectively referred to as ETC.

ETC. TC&C objected to the award and filed a plea to the jurisdiction and a motion to dismiss. The trial court granted ETC's partial motion for summary judgment and denied TC&C's partial motion for summary judgment. On February 22, 2016, a jury was empaneled; however, some issues were tried to the trial court. The jury awarded TC&C $50,000 for the value of the easement and for damages. In accordance with the jury verdict, the trial court ordered that TC&C recover from ETC $50,000. TC&C appeals from the trial court's judgment. We affirm.

## Jurisdiction

In the first seven issues on appeal, TC&C argues that the trial court erred in its findings on jurisdiction. Conclusions of law are reviewed de novo. *Perez v. Old West Capital Company*, 411 S.W.3d 66, 75 (Tex.App.-El Paso 2013, no pet.). The trial court's findings of fact have the same weight as a jury verdict, and we review the legal and factual sufficiency of the evidence as we would a jury's findings. *Perez v. Old West Capital Company*, 411 S.W.3d at 74. If there is more than a scintilla of evidence supporting a finding of fact, we will overrule a legal sufficiency challenge. *Id*. In reviewing a factual sufficiency challenge, we consider all of the evidence and will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id*. The trial court concluded as a matter of law:

- This Court has jurisdiction over the subject matter and parties hereto.
- Public use and necessity for the pipeline and the Easements are established by one or more of the following: (1) legislative declaration, (2) classification and regulation of the pipeline at issue as part of ETC's

gas utility pipeline system, (3) ETC's ownership or operation for compensation in Texas of equipment or facilities to transmit or distribute combustible hydrocarbon natural gas for sale or resale in a manner not subject to federal jurisdiction, and, or (4) ETC's ownership, management, operation, lease, or control in Texas of a gas utility pipeline system for a business that transports, conveys, distributes, or delivers natural gas for public use or service for compensation or its ownership, operation, or management of a pipeline that is for transporting or carrying natural gas whether for public hire or not and for which right-of-way has been acquired by exercising the right of eminent domain.

- ETC is a gas corporation and ETC's pipeline at issue is part of a gas utility pipeline system as gas utility is defined in the Texas Utilities Code.
- As a gas corporation under the Texas Utilities Code, ETC has the power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation, including the Easements on, over, across, and under the Property.
- ETC's pipeline and gas utility system of which said pipeline is a part, serve the public use and ETC duly and properly declared the necessity of the pipeline extension (at issue in this case) to its existing gas utility pipeline system and the necessity of the lands rights and easements needed in connection therewith, including the Easements on, over, across and under the property.
- ETC has strictly complied with the statutes authorizing this eminent domain proceeding.
- ETC has the legal capacity to bring this eminent domain proceeding and the legal capacity to be entitled to recover the Easements.

TC&C first argues that ETC failed to satisfy jurisdictional requirements because it did not show that the pipeline is for an actual public use. TC&C argues that it is the condemnor's burden to show constitutionally sufficient actual public use of the property to be condemned citing *Texas Rice Land Partners, Ltd., v. Denbury Green Pipeline-Texas, LLC,* 363 S.W.3d 192 (Tex.2012) as authority.

The Texas Constitution safeguards private property by declaring that eminent domain can only be exercised for "public use." *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC,* 363 S.W.3d at 194 (quoting Texas Constitution art. I, § 17). The ultimate question of whether a particular use is a public use is a judicial question to be decided by the courts as a matter of law. *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC,* 363 S.W.3d at 198 n. 16; *Housing Authority of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79, 84 (1940); *Saner v. BridgeTex Pipeline Company, LLC,* No. 11-14-00199-CV, 2016 Tex.App. LEXIS 7764 *3 (Tex.App.-Eastland July 21, 2016, pet. den'd).

*Denbury* involved a carbon dioxide ($CO_2$) pipeline company that had been granted the power of eminent domain by the Railroad Commission as a "common carrier" pipeline company pursuant to the provisions of the Natural Resources Code. *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC,* 363 S.W.3d at 194-95; see TEX. NAT. RES. CODE ANN. § 111.002(6) (West 2011). The Texas Supreme Court held that a landowner can challenge the eminent-domain power of the pipeline company by contesting whether the proposed pipeline will in fact be public, rather than private. *Id*. at 195.

In *Denbury*, the Court held that to qualify as a common carrier with the power of eminent domain, the pipeline must serve the public; it cannot be built only for the builder's exclusive use. *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC,*

363 S.W.3d at 200. The Court noted that extending the power of eminent domain to the taking of property for a private use cannot survive constitutional scrutiny. *Id*.

The Court established a test to determine what qualifies as public use for a carbon dioxide pipeline and held that, "for a person intending to build a $CO_2$ pipeline to qualify as a common carrier under Section 111.002(6), a reasonable probability must exist that the pipeline will at some point after construction serve the public by transporting gas for one or more customers who will either retain ownership of their gas or sell it to parties other than the carrier." *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d at 202; *Saner v. BridgeTex Pipeline Company, LLC*, at *4. The Court in *Denbury* court stated "Our decision today is limited to persons seeking common-carrier pipeline status under Section 111.002(6). We express no opinion on pipelines where common-carrier status is at issue under other provisions of the Natural Resources Code or elsewhere." *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d at 202 n. 28.

ETC is claiming the right of eminent domain under the Texas Utilities Code rather than the Natural Resources Code used in *Denbury*. Therefore, the holding in *Denbury* requiring a person intending to build a $CO_2$ pipeline to qualify as a common carrier and demonstrate a "reasonable probability" that the pipeline will serve the public by transporting gas for one or more customers is not applicable in this case. We recognize that courts have extended the holding in *Denbury* to other provisions in the Natural

Resources Code; however, we have found no cases extending the holding to provisions in the Texas Utility Code. Moreover, we note that ETC met the standard in *Denbury* by providing evidence of public use by producing evidence that it has unaffiliated customers.

The Texas Utility Code provides that, "a gas or electric corporation has the right and power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation." TEX. UTIL. CODE ANN. § 181.004 (West 2007). Gas utility means:

> a person who owns, manages, operates, leases, or controls in this state property or equipment or a pipeline, plant, facility, franchise, license, or permit for a business that:
> (1) transports, conveys, distributes, or delivers natural gas:
> (A) for public use or service for compensation;
> (B) for sale to municipalities or persons engaged in distributing or selling natural gas to the public, in a situation described by Subdivision (3);
> (C) for sale or delivery to a person operating under a franchise or contract with a political subdivision of this state; or
> (D) for sale or delivery to the public for domestic or other use; [or]
>
> (2) owns, operates, or manages a pipeline:
> (A) that is for transporting or carrying natural gas, whether for public hire or not; and
> (B) for which the right-of-way has been or is hereafter acquired by exercising the right of eminent domain; …

TEX. UTIL. CODE ANN. § 121.001(a) (West 2007).

The right of eminent domain granted by the constitution resides in the legislature, and the legislature may declare the conditions of its use as well as granting the authority to exercise the right to non-governmental entities, so long as the exercise is for a public

use.  *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 717 (Tex.App.-Corpus Christi 2000, pet. den'd), *overruled in part on other grounds*, 141 S.W.3d 172, 181 (Tex. 2004).  The determination of what constitutes a public use justifying the grant of the right of eminent domain is properly a political decision, and as such is for the legislature.  *Id.*

A gas utility is affected with a public interest.  TEX. UTIL. CODE ANN. § 121.051(a) (West 2007). ETC established that it is a gas utility with the power of eminent domain. The Railroad Commission has classified ETC as a gas utility pipeline.  ETC owns, operates, or manages the ETC Extension for transporting or carrying natural gas for public use or service for compensation, and has owned and continues to own the pipeline for transporting natural gas for a fee for all shippers desiring to ship natural gas through the pipeline.

The legislative declaration that a use is public and the delegation of power of eminent domain is to be given great weight by the court in reviewing a complaint that a particular use, sanctioned by the legislature is, in fact, private.  *Tenngasco Gas Gathering Co. v. Fischer*, 653 S.W.2d 469, 475 (Tex.App.-Corpus Christi 1983, no pet.); *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d at 719.  Such declaration is binding on the court unless it is manifestly wrong or unreasonable, or the purpose for which the declaration is enacted is "clearly and probably private."  *Tenngasco Gas Gathering Co. v. Fischer*, 653 S.W.2d at 475; *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d at 719.  The legislature by its enactment has determined the importance to the public of moving natural gas from the producing

areas to where it can be used.  *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d at 719.

Accordingly, we find that the use at issue in this case qualifies as a "public use" so as not

to offend the Constitution.  *See Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d at 719.

TC&C next argues that ETC failed to satisfy jurisdictional requirements because it

did not provide a proper authorizing resolution to justify the condemnation.  TC&C

argues that ETC's August 11 Resolution does not include the property of the Easement

and that ETC's August 27 Resolution does not purport to be from the proper entity of

governing body of ETC.

Section 181.004 of the Texas Utility Code allows a gas utility the power to condemn

property without requiring a proof of necessity.  When a statute delegating the power of

eminent domain does not require proof of necessity the condemnor need only show that

its board of directors determined that the taking was necessary.  *Mercier v. MidTexas*

*Pipeline Co.*, 28 S.W.3d at 719.  This determination is conclusive absent fraud, bad faith,

abuse of discretion, or arbitrary or capricious action.  *Id*.

The August 11 and August 27 Resolutions both state:

> …the Board of Managers has found and determined that there is a
> public necessity for, and the public welfare and convenience will be served
> by, the acquisition of certain properties in Grimes, Leon, Limestone, and
> Madison Counties, Texas to locate, construct, operate and maintain a
> natural gas pipeline …

Charles Moody, the Construction Manager for ETC, described the ETC pipeline system

and noted that the extension would cross land owned by TC&C.  We conclude that the

resolutions were sufficient to satisfy the "necessity" requirement because it showed that the taking of the property was necessary to serve a public purpose. *See Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d at 720. ETC was not required to produce a resolution finding that the TC&C's land was necessary for the pipeline project. *Id*. TC&C has not shown that ETC engaged in fraud, bad faith, abuse of discretion, or arbitrary or capricious action. *Id*.

We find that the evidence supports the trial court's findings of fact and conclusions of law relating to jurisdiction, public use, and necessity. We overrule the first, second, third, fourth, fifth, sixth, and seventh issues on appeal.

In the eight issue, TC&C argues that the trial court erred in failing to submit fact questions to the jury on the underlying contested jurisdictional issues. TC&C requested the trial court to submit the two jurisdictional issues, public use and the failure to have a proper resolution, to the jury. The trial court declined to submit the issues to the jury finding that the authority of a pipeline company to condemn property is a matter of law for the trial court. TC&C contends that the issues involved underlying fact issues that should have been submitted to the jury.

The trial court's jurisdiction in a condemnation action is dependent upon the right of the condemnor to take. *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d at 723. A court has the right to determine its own jurisdiction as a matter of law, even if that determination implicitly involves the resolution of fact issues. *Id*. Accordingly, the trial court was not

required to submit questions concerning its jurisdiction to be determined by the jury. *Id*. We overrule the eighth issue.

## Admission of Evidence

In the ninth issue, TC&C argues that the trial court erred in "admitting and/or considering certain of ETC's Affidavits … and Written Deposition Evidence … and in denying objections thereto." We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

In support of its arguments on public use and necessity, ETC offered affidavits and written depositions. TC&C argues that Moody's affidavit violates the Best Evidence Rule and that the affidavits of Ken English, John Harris, as well as the deposition of Ever Martinez are conclusory. The trial court did not rule on TC&C's objection to the affidavit of Ken English because of its finding on public use.

Moody's affidavit does not attempt to interpret the contents of the Resolutions. Rather his affidavit describes the pipeline system and describes the land to be condemned and how it relates to the system. The Resolutions properly showed necessity without further interpretation by Moody. We do not find that the trial court abused its discretion in overruling the TC&C's objections and admitting the affidavits of Moody and Harris and the deposition of Martinez. We overrule the ninth issue.

## Property Description

In the tenth issue on appeal, TC&C argues that the trial court erred in finding in Conclusion 11, and Findings 1 and 3 that the Easement taken is properly described in the petition. In the Findings of Fact 1 and 3 the trial court found:

- On January 30, 2004, ETC Texas Pipeline, Ltd. ("ETC Texas") made a written offer to TC&C Real Estate Holdings, Inc. ("TC&C) for certain pipeline easements (collectively the "Easements") traversing a tract of land owned by TC&C, described as:

   > W.L. Moss Survey, Abstract 26, and being a portion of that certain called 190 acres of land conveyed to T C AND C REAL ESTATE HOLDINGS, INC., as described by Warranty Deed recorded in Volume 879, Page 514 of the Deed Records of Limestone County, Texas (the "Property").

- On February 23, 2004, ETC Texas filed its Statement and Petition in Condemnation ("the Petition") against TC&C with the Clerk of this Court for the Easements traversing the Property, said Easements are more particularly described and shown in Exhibit A, consisting of a metes and bounds description and sketch, attached herein.

The trial court found in Conclusion 11:

- Exhibit A attached herein and which was also attached to the Petition and amended petition both contain a legally sufficient property description of the Easements.

Certainty required in descriptions of easements is of the same nature as that required in conveyances of land. *Compton v. Texas Southeastern Gas Co.*, 315 S.W.2d 345, 348 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.). Description of an easement is to be tested by requisites of a deed and it must be construed by reading all its provisions and they must be made to harmonize and to give effect to all such provisions wherever possible. *Compton v. Texas Southeastern Gas Co.*, 315 S.W.2d at 349.

In her affidavit, Nelda Foster, a licensed and registered professional land surveyor, stated:

> I have reviewed the Easement Description in its entirety, and based solely on the descriptive information contained in the Easement Description and in the documents specifically referenced therein and in said referenced documents, I was able to accurately define and determine and based solely thereon have defined and determined the specific lands included within the fifty foot 2.80 acre permanent easement and the two parallel twenty-five foot temporary easements identified in the Petition and described on the Easement Description (collectively, the "Easements"), and to identify and determine each of the boundaries of those Easements.

The trial court did not err in finding that the Petition and attached Exhibit A contained a legally sufficient property description of the Easements. We overrule the tenth issue.

## Remainder Damages

In the eleventh issue, TC&C argues that the trial court erred in granting partial summary judgment and excluding remainder damages. TC&C is the owner of a "West tract" consisting of 273.9 acres and also an "East tract" consisting of 365.25 acres. The pipeline traverses the southeastern corner of the West tract, and TC&C contends that the pipeline causes a significant portion of the East tract to be unavailable for lignite mining.

We review de novo a trial court's grant or denial of a traditional motion for summary judgment. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005). In reviewing a traditional summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). The

movant carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P.166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a traditional summary judgment, we must consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *See Goodyear Tire & Rubber Co.*, 236 S.W.3d at 756.

Where separate, but contiguous tracts are integral parts of an entity under common ownership in such physical and functional relationship that they are joined by unity of use by the same proprietor into a single property, they will be treated as a whole in assessing damages to the remainder in the taking of a part. *McLennan County v. Stanford*, 350 S.W.2d 208, 209 (Tex.Civ.App.-Waco 1961, no writ). Property has a unity of use if the tracts are "devoted to an integrated unitary use or if the possibility of their being so combined for a unified use in the reasonably near future is such as to affect market value." *McKinney Independent School Dist. v. Carlisle Grace, Ltd.*, 222 S.W.3d 878, 883 Tex.App.-Dallas 2007, pet. den'd); *So. Pipe Line Corp. v. Deitch*, 451 S.W.2d 814, 818 (Tex.Civ.App.-Corpus Christi 1970, writ ref'd n.r.e.).

The East and West tracts are separated by tracts of land owned by different landowners; however, there is a road connecting the East and West tracts. TC&C claims that the pipeline caused the East tract to be unavailable for lignite mining. It is

undisputed that there was no lignite mining on the property at the time of the taking and that there were no leases for lignite mining in the reasonably near future. The trial court did not err in granting ETC's partial motion for summary judgment. We overrule the eleventh issue.

## Damages

In the twelfth issue, TC&C argues that the trial court erred in finding that loss of lignite in place was not a proper measure of recoverable damages, and not allowing consideration of same. In the thirteenth issue, TC&C contends that the trial court erred in excluding expert testimony relating to the damages.

TC&C sought to introduce the testimony of David Krebs and Paul Bierschwale who would testify about the existence of mineable lignite that could not be recovered because of the placement of the pipeline. Krebs is a mining engineer who determined that a reasonable mine operator operating the Kossee Mine would mine the lignite on the TC&C property. However, he believed that the pipeline was too expensive to move and that a reasonable mine operator would not pay to move the pipeline. Bierschwale, an appraiser, relied on Krebs's testimony in forming his opinion on the fair market value of the property.

The trial court ruled that the testimony was inadmissible because the loss of lignite in place was not a proper measure of damages. The trial court's ruling was not based upon Krebs's qualifications, but based upon the proper measure of damages.

The proper measure of damages is a question of law. *See Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex.2001). Thus, in condemnation cases, the trial court must determine if the damages claimed are compensable as a matter of law and then admit evidence accordingly. *Id*. In a condemnation case, the normal measure of damages is the land's market value. *See City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex.2001). Market value is the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and bought by one who desires to buy, but is under no necessity of buying. *Id*.

Evidence of highest and best use is considered in establishing the market value of property at the time of taking. The highest and best use is defined as the reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. *City of Sugar Land v. Home and Hearth Sugarland, L.P.*, 215 S.W.3d 503, 511 (Tex.App.-Eastland 2007, pet. den'd). Consideration cannot be given to uses which are purely speculative. *Id*.

At the time of the taking, the property was used for cattle grazing. Ever Martinez, a corporate representative from Luminant, stated in his deposition that although Luminant had conducted exploratory core drilling on TC&C's property, Luminant had no plans to mine lignite on TC&C's property and that Luminant had no plans to include

TC&C's property in any mining plan. The trial court did not err in finding that the loss of lignite in place was "speculative" and not an appropriate measure of damages.

The trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718-19 (Tex.1998). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex.1985).

To be admissible, expert testimony must be relevant to the issues in the case and must be based upon a reliable foundation. TEX. R. EVID. 702; *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d at 720. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Expert testimony that has no relationship to any of the issues in the case is irrelevant because it does not satisfy the Rule 702 requirement that the testimony be of assistance to the jury in understanding the evidence or determining a fact in issue. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex.2010); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex.2002); *Enbridge G & P (East Texas) L.P. v. Samford*, 470 S.W.3d 848, 857 (Tex.App.-Tyler 2015, no pet.). The trial court has the threshold responsibility under Rule 702 "of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d at 728;

*Enbridge G & P (East Texas) L.P. v. Samford,* 470 S.W.3d at 857. The relevance and reliability requirements of Rule 702 apply to all expert evidence offered under the rule, although the criteria for assessing relevance and reliability must vary depending on the nature of the evidence. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d at 72; *Enbridge G & P (East Texas) L.P. v. Samford,* 470 S.W.3d at 857.

Krebs and Bierschwale's testimony was based upon damages to TC&C because there was unrecoverable lignite on the property due to the pipeline. However, the record clearly shows that there were no plans to mine lignite on the property at the present time or in the foreseeable future. Opinion testimony that is conclusory or speculative is not relevant evidence because it does not tend to make the existence of a material fact more probable or less probable. *See* TEX.R. EVID. 401. Expert testimony is unreliable if it is no more than subjective belief or unsupported speculation. *TXI Transportation Co. v. Hughes,* 306 S.W.3d 230, 239 (Tex.2010). The trial court did not err in excluding the testimony of Krebs and Bierschwale. We overrule the twelfth and thirteenth issues.

### Findings of Fact

In the fourteenth issue, TC&C complains that the trial court failed to make additional Findings of Fact as requested by TC&C. TC&C requested additional findings of fact and conclusions of law on the jurisdictional issues and the basis of the exclusion of the expert testimony. TC&C contends that the trial court's failure to make the additional findings prevents TC&C from adequately presenting its case on appeal.

Rule 298 of the Texas Rules of Civil Procedure provides:

> After the court files original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions. The request for these findings shall be made within ten days after the filing of the original findings and conclusions by the court. Each request made pursuant to this rule shall be served on each party to the suit in accordance with Rule 21a.

> The court shall file any additional or amended findings and conclusions that are appropriate within ten days after such request is filed, and cause a copy to be mailed to each party to the suit. No findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions.

TEX.R.CIV.P. 298.

Rule 298 contemplates that the request for further additional or amended findings shall specify the further additional or amended findings that the party making the request desires the trial court to make and file. *Wagner v. Riske*, 142 Tex. 337, 178 S.W.2d 117, 119-20 (1944); *Alvarez v. Espinoza*, 844 S.W.2d 238, 241 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.). A bare request is not sufficient; proposed findings must be submitted. *Alvarez v. Espinoza*, 844 S.W.2d at 242. TC&C did not submit proposed findings of fact for the requested issues.

A trial court may properly refuse requested additional findings of fact and conclusions of law where they are either already adequately covered by the court's findings and conclusions, or were not material and necessary. *Kirby v. Chapman*, 917 S.W.2d 902, 909 (Tex.App.-Fort Worth 1996, no writ). We find that the trial court's findings of fact and conclusions of law adequately covered TC&C's jurisdictional

complaints. The trial court's decision to exclude the expert testimony of Krebs and Bierschwale was clear from the record.

If the record shows that the complaining party did not suffer injury the failure to make such additional findings does not require reversal. *Kirby v. Chapman*, 917 S.W.2d at 909. Where refusal does not prevent the adequate presentation of the matter being complained of on appeal, no reversible error has occurred. *Id*. We find that TC&C was able to adequately present the issues on appeal. We overrule the fourteenth issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Justice Davis,
      Justice Scoggins, and
      Judge McFarling[2]
Affirmed
Opinion delivered and filed December 20, 2017
[CV06]



---

[2] The Honorable Judge Bruce McFarling, Judge of the 362nd District Court, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 74.003(a) (West 2013).